GEORGE HUNT, *Appellant*, v. CHARLES F. TURNER, *Appellee.*

1.  Exceptions to an answer in chancery must conform to chancery usage and unless they do so, are properly overruled. The purpose and scope of exceptions to an answer examined, and proper forms stated.

2.  As a general rule if a person is domiciled in a state his personal property, in contemplation of law has its *situs* in that state and is taxable there. Some exceptions to this rule are referred to in the opinion.

3.  In this case the evidence tends to show that the appellant became a resident citizen of Walton county, Florida, some time before the first of January, 1903, and in the spring of 1903, voluntarily made a return of his taxable property to the tax assessor of Walton county, including therein $42,000.00 in money which he had in Chicago in bank or in the hands of brokers for the purpose of speculation: Held, that under the allegations of the bill, and the facts shown in evidence, he was not entitled to be relieved from the payment of the taxes on said money, and that under the laws of Florida, his real estate situated in Walton county is responsible for said taxes.

4. Under section 36, chapter 4322, laws of 1895, it is not neces-
sary for a tax collector to obtain a warrant from the county
commissioners, unless there has been a total failure or omis-
sion on the part of the collector to obey the command of the
warrant issued by the assessor.

This case was decided by Division B.

Appeal from the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the
court.

*S. K. Gillis* and *Daniel Campbell & Son,* for appel-
lant;

*W. W. Flournoy,* for appellee.


HOCKER, J.—On the 20th day of April, 1905, George
Hunt of Walton county filed his bill of complaint in the
circuit court of Walton county against Charles F. Tur-
ner, of the same county, wherein he in substance alleged
that he was over twenty-one years old, and had been a
resident of Walton county since the month of March, A.
D. 1903, and that prior to that date he had been a resi-
dent continuously of Chicago, Illinois, for eight years;
that the defendant was and had been tax collector of
Walton county since January, 1903; that during March,
1903, he the complainant was given a tax notice upon
which he was requested to list his property; that he was
not familiar with the laws of Florida or the customs
of its officers; that for four years prior thereto he was
carrying on business through agents in Chicago and New
York city; that to support the said business he had
money deposited in bank in Chicago and when he filled

out the tax list, by error, and mistake he included the $20,000 he had invested in business in Chicago, Ill., and $22,000.00 that he had on deposit; that said sums were not taxable in Florida, and but for his error and mistake would not have been listed for taxation as aforesaid; that the tax collector assessed the said sums of money and the taxes thereon for the year 1903 at the amount of $646.80. That there was certain real estate and personal property in Walton county assessed to the complainant upon which all taxes and charges assessed thereon were paid although he had some doubts about the legality of the assessment of the personal property; that complainant has not paid the said sum of $646.80, the amount of the state and county taxes levied upon the sums in Chicago and New York for the reason that said assessment was not lawfully made, as the property was not assessable in Florida, and because complainant was not a resident of Florida on January 1st, 1903; that the defendant threatens and intends to levy upon all complainant's real estate in Walton county which amounts to about 3,140 acres, besides town lots, valued at least, at $3,000.00 to satsify the tax of $646.80 levied on property in Chicago and New York; that defendant intends to levy upon said lands and advertise the same for sale on the first Monday in June, 1905, and refuses to give complainant time to test the legality of the assessment by petition before making said levy and sale; that the defendant has no warrant or authority to make such levy and sale; that orator is informed and believes and therefore avers that the tax levied on personal property is not a lien on the real estate of orator, and taxes thereon having been paid defendant could not be authorized by any warrant to levy upon and sell the same to satisfy the alleged taxes upon the personal property; that the threatened sale will cast a cloud upon the complainant's

title. The bill prays for an order restraining the defendant from advertising and selling his real estate in Walton county, for the general relief, etc.

On the 20th of April, 1905, a temporary restraining order was granted.

On the 19th of July, 1905, the defendant tax collector filed an answer, among other things, it sets up that complainant bought lands near Argyle, Walton county, and that on or about October, 1901, he moved with his family and located on those lands, and soon thereafter built a residence thereon of not less than $1,000.00 value and engaged in a general mercantile business and has continuously resided at said place during the years 1901, 1902 and 1903.

The answer further states on information and belief that W. B. McLeod was the tax assessor in and for Walton county for the year 1903 and that he, in the discharge of his duties, in the early part of the year, left with the complainant a regular blank used by tax assessors of the state for making out tax returns by the individual taxpayers; that complainant, after keeping the return for several weeks filled it out, under oath and delivered the same to the tax assessor, a copy of which is made part of the answer, that the tax assessor did nothing to mislead the complainant in making his returns. This copy shows that the complainant returned as capital invested $20,000.00, and as money on deposit subject to draft whether in or out of the state $22,000.00, making an aggregate of $42,000.00 subject to taxation within Florida.

The answer further alleges that the laws specially provide that taxes shall be a lien on real estate, from the date of a valid assessment, and that it shall be responsible for taxes assessed against personal property of the tax payer, and that warrants issued by the tax as-

42—Vol. 54

sessor are of full force and effect in the hands of the tax collector to whom it may be issued until all taxes remaining unpaid shall have been collected and final report and settlement made with the state and county authorities, and that by virtue of a warrant duly issued in accordance with the statutes, the defendant, as tax assessor for 1903, is duly authorized to levy upon the land and tenements, goods and chattels and effects of complainant for securing the payment of the unpaid tax of $646.80 on the property returned by complainant, which sum was legally assessed by the assessor and is unpaid. The answer has further allegations which amount to a demurrer to the bill.

The complainant endeavored to except to the answer in the following words after giving the style of the case: "The complainant by his solicitor files the following exceptions to the answer of the respondent, to-wit:

First, the said answer of the respondent is insufficient.

Second, the said answer is not responsive to and fails to set forth any defense to the material allegations in the bill of complaint.

Third, that said answer sets forth conclusions of law and not of facts.

Fourth, the said answer is based on information and belief of the respondent."

Upon a hearing the exceptions were overruled by the circuit judge. Replication was filed to the answer and a master was appointed to take the testimony. A commission was also issued to take the testimony of certain absent witnesses. On the 13th of February, 1907, the cause came on for final hearing on the pleadings and evidence and a final decree dismissing the bill was entered for the defendant. An appeal was taken from this decree.

There are five assignments of error which are re-
ducible to two: First, the court erred in overruling the
exceptions to the answer; and, second, the court erred in
decreeing the bill to be without equity, denying a perma-
nent injunction and in making a decree contrary to the
testimony and to law.

We are of opinion that the court committed no error
in overruling the exceptions to the answer. This court
has on several occasions delivered itself of its views of
the proper use of exceptions to an answer in chancery
and of the proper method of presenting the same. In
Story on Equity Pleading (10th ed.) § 861, *et seq.* the
subject is discussed. Exceptions to an answer will lie
for matter which is scandalous, or impertinent, or for
insufficiency. If an answer goes out of its way to state
scandalous matter, or matter which is not material to
the defendant's case it will be expunged on proper ap-
plication to the court. If in the opinion of the plaintiff
the allegations or interrogations of the bill are not suf-
ficiently answered, he may take exceptions to such
answer, which exceptions are always in writing, stating
the parts of the bill which the complainant alleges are
not sufficiently answered, and praying that the de-
fendant may in such respects put in a further and full
answer to the bill. This court in Peck v. Osteen, 37
Fla. 427, 20 South. Rep. 549, in dealing with this ques-
tion referred to the case of Richardson v. Donehoe, 16
West Va. 704, as containing a proper form of excep-
tions. It is as follows: "Exceptions taken by the said
complainant to the answer put in by the defendant C.
D. to the said complainant's bill of complaint. *First
exception*—For that the said defendant C. D. hath not
to the best and uttermost of his knowledge, remem-
brance, information and belief answered and set forth
whether *(set forth the interrogatory in the bill which is*

*not answered in. hæc verba.*) *Second exception*—For that the said defendant C. D. hath not in manner aforesaid answered and set forth whether, etc. (as *supra.*) In all which particulars the answer of the said defendant C. D. is, as said complainant is advised is imperfect, insufficient and evasive, and the said complainant excepts thereto, and prays that said defendant C. D. may put in a further and better answer to the said bill of complaint. J. E., Solicitor and Counsel for Complainant." This form is taken from 3 Barb. Ch. Pr. (2nd ed.) p. 422. On page 428 of the same volume is found a form of exceptions for scandal and impertinence. Moore v. Clem, 45 Fla. 476, 34 South. Rep. 305.

The exceptions in the instant case do not in any respect conform to the proper mode of taking exceptions to an answer and are more in the nature of a demurrer thereto, which is not a recognized procedure in chancery practice. If an answer is in substance bad as a defense and raises no issue requiring proof of the allegations of the bill, the proper practice is to set the cause down for hearing on bill and answer. Story's Eq. Pl. (10th ed.) § 456.

The next contention is that the preponderance of the testimony does not show that appellant was a resident of Walton county on January 1st, 1903, though it is admitted there is a conflict on this point, the allegations of the bill being that he was then a resident of Chicago, Ill. and had been continuously for more than eight years, and therefore that the moneys and credits referred to in the bill could only be lawfully taxed in Walton county, Florida. In answer to the tenth interrogatory propounded to the plaintiff he says: "On the 1st day of January, 1903, I was in Holmes county, Florida; I was there only temporarily located in Florida—in Holmes county, Florida. Two years prior to January 1st, 1903,

my family resided in the state of Colorado, and they went from Colorado to Walton county, Florida, in the month of November, 1901, where they stayed until October 6th, 1902, and then went to Holmes county, Florida, where they stayed until January 6th, 1903." It appears from other testimony offered by complainant that the house he lived in in Walton county was burned in September, 1902, and the complainant moved temporarily into a section house of the Louisville & Nashville R. R. Co. a short distance from the house that was burned on the 6th of October, 1902. This house was just across the line in Holmes county. Complainant rebuilt the house in Walton county and moved back into Walton county about the 6th of January, 1903. It seems that the appellant and his family have lived in this house since that time, though complainant may have been away in Chicago temporarily once or twice.

Mr. William King testified in substance that he knew the complainant, sold him the property at Argyle, Walton county, in January, 1902, the dwelling house which was subsequently burned, and rebuilt by Mr. Hunt; that Mr. Hunt told him he wanted the place for a home, a lifetime business. Said he had rather live at Argyle than DeFuniak. There is no contradiction of this evidence. There is no proof that Mr. Hunt had any other home or domicile than this one in Walton county. There is nothing to sustain the allegation of his bill that he resided in Chicago on the 1st of January, 1903, and eight years continuously before that time. He was speculating in grain and cotton there through agents, and when he was occasionally there stopped at boarding houses. When he left Walton county in October, 1902, and took up his residence in a section house in Holmes county just across the line it seems to be clear from the testimony of Mr. McDonald, the section boss, and other

witnesses, this move was a mere expedient until he could rebuild his own house in Walton county; for about the 6th of January, 1902, he moved into another house, the Black house, in Walton county, and in a few weeks moved from the Black house into his new house in the same county where he has since resided. In February or March, 1903, Mr. McLeod, the tax assessor of Walton county went to Mr. Hunt's house to get his tax return. Mr. Hunt was busy and the tax assessor left a blank with him to be filled out. He kept it about a month and returned it to the tax assessor filled out. He made no complaint to the tax assessor about the blank being misleading. This return shows, among other things, "*notes* of solvent debtors whether in or out of the state, value $3167.00; *capital* invested (other than enumerated above) value $20,000.00. Moneys on deposit subject to draft whether actually in or out of the state $22,000.00. This return is signed by the appellant and apparently sworn to, though it is probable that the tax assessor signed the jurat when the blank was left with the complainant, and before he actually signed it.

Mr. Hunt in explaining these items says the $3,167 was secured by mortgage on property in Walton and Holmes counties; that on January 1st, 1903, he had in Chicago with Lamson Brothers & Co. $14,000; with Milmene, Bodman & Co., $8,087, with Harris Gates Company $5,698.00, with the Bank of Montreal, $8,114.00. On the 31st of March, 1903, he had in Chicago with these parties about $42,000.00 and this was there for the purpose of being invested in cotton and grain.

A witness for complainant, one F. J. Deutche, a hotel keeper, testified that the complainant Hunt resided at his house in Chicago from May, 1895, until September 24, 1902, when he went to Florida; that he returned

in May, 1903, and has lived continuously with him ever since. Also one Olaf Christoferson testified that he has known Mr. Hunt eleven years, since 1895, and resided continuously at the same house with him in Chicago (Mr. Deutche's house, 36 W. Randolph street.)

This testimony was taken in May, 1906, and is inconsistent with that of the complainant himself and other witnesses. He concedes that he became a resident of Walton county in March, 1903, though the evidence of his son shows he had been living in Walton county and in the section house in Holmes county since the fall of 1902. It is also shown in the testimony that he was a registered voter in Walton county sometime before 1904. It is also shown by the evidence of Mrs. Hunt that the complainant was in Florida with his family in January, February, March, April, and part of May, 1902, and that the family came to Argyle, Walton county the last of December, 1901. Mrs. Hunt says that Mr. Hunt owned no home in Chicago; that for about fifteen years prior to 1901, her children and herself had lived in Nebraska, which she considered her home. She says she has been in Florida since December, 1901. All this is absolutely inconsistent with the idea that the complainant continuously resided in Chicago from 1895 to 1906 (excepting from September, 1902, to May, 1906). So far as we can discover from the evidence it does not clearly appear that the complainant and his family ever had any other home than the one in Walton county, Florida. Having come to this conclusion it is unnecessary for us to consider the contention that the moneys in question were assessed by the mistake of the complainant in making out the list of his taxable property. We do not think he was mistaken, and the rule is that a tax payer who lists his property for taxation is generally bound by the statements he makes as to its extent

and value, and estopped from disputing an assessment made in conformity therewith in the absence of fraud, accident, mistake or other reasonable excuse, or want of jurisdiction on the part of the assessing officers rendering the assessment void. 27 Am. & Eng. Ency. Law (2nd ed.) 671; People *ex rel.* Johnson v. Atkinson, 103 Ill. 45; Dennison v. County Commissioners of Williamson County, 153 Ill. 516, 39 N. E. Rep. 118; 1 Cooley on Taxation, 618-619.

In McConnell v. Kelley, 138 Mass. 372, it is said: "A man has a right to change his domicile for any reasons satisfactory to himself. In determining whether there has been such a change from one place to another, the test is to inquire whether he has in fact removed his home to the latter place with the intention of making it his residence permanently, or for an indefinite time. If he has, he loses his old domicile, and acquires a new one with all its rights and incidents."

It is contended by appellant that even though his residence was in Walton county on January 1st, 1903, still the moneys making up the $42,000 were not lawfully taxable in that county because they were in Chicago and invested in speculation in cotton and grain.

The assessment in the instant case was made under Chapter 4322 Acts of 1895, and the 1st, 3rd, 5th, 15th and 16th sections of which are as follows:

"Section 1. That all property, real and personal, in this state, not hereby expressly exempt therefrom, shall be subject to taxation in the manner provided by law.

Sec. 3. The terms personal property and personal estate, as used in this chapter, shall have the same meaning, and shall, for the purpose of taxation, be construed to include all goods and chattels, moneys, and effects, all boats and vessels, whether at home or abroad, all debts due or to become due, from solvent debtors,

whether on account, contract, note or otherwise, all public stocks or shares in all incorporated or unincorporated companies.

Sec. 5. The term money or moneys whenever used in this act, shall be held to mean gold and silver coin, United States treasury and bank notes, legal tender and all other forms of currency, and every deposit which any person owning the same or holding in trust and residing in this state is entitled to withdraw in money on demand. The term credits when used in this act shall be held to mean and include every claim and demand for money or other valuable thing, and every annuity or sum of money receivable at stated periods, due or to become due. The terms parcel of real property and parcel of land wherever used in this act, shall each be held to mean the quantity of land in the possession of, owned by or recorded as the property of the same claimants, persons or company. Every word importing the singular number only, may extend to and embrace the plural number, and every word importing the plural number, may be applied and limited to the singular number, and every word importing the masculine gender only, may be extended to and applied to females as well as males. Whenever the word oath is used in this act, it may be held to mean affirmation, and the word swear in this act shall be held to include affirm.

Sec. 15. Between the first day of January and the first day of July in each year, the assessor in each county, with the aid of such assistant assessors as may be nominated by the assessor and appointed by the county commissioners, shall ascertain by diligent inquiry, the names of all taxable persons in his county, and also all their taxable personal property and all taxable real estate therein, on the first day of January of such year, and shall make out an assessment roll of all such taxable

property.    And the assessor or his assistant shall make at least one visit to each precinct for the purpose of receiving tax returns, after having given ten days' notice of such visit, between the first day of January and the first day of March, and tax returns by owners or agents must be made between the first day of January and the first day of April.    The assessment of personal property shall be made separate from the assessment of real estate, but personal property shall be responsible for the taxes on real estate, and real estate shall be responsible for the taxes on personal property, and both shall be responsible for a poll tax.

Sec. 16.    He shall set down in the assessment roll in separate columns according to the best information he can obtain.    1st.    The name of the person subject to poll tax, or owning personal property in the county, and the number of their district;    2nd.    The number of neat and stock cattle;    3d.    The number of horses, asses and mules.    4th.    The number of sheep and goats. 5th.    The number of swine and dogs.    6th.    The value of all household and kitchen furniture, books, watches, silverware, moneys, in possession or at interest, or capital invested in trade, including notes, mortgages, except given for the purchase money and accounts.    7th.    The full cash value of the personal property owned by, or to be taxed to such persons as provided by law.    The tax assessor shall give to each person or his agent, at the time of assessing the property, one exact copy or duplicate roll of the property assessed; and where persons send in the list of their properties by mail, the assessor shall be required to give such duplicate roll, only upon demand by said person, and upon his enclosing a stamp to return said roll."

It will be seen that an assessor must ascertain all taxable property in his county on the first day of January

of each year, and that capital invested in trade and "all goods and chattels, moneys and effects, claims and demands, whether at home or abroad, deposits which the owner is entitled to withdraw in money on demand, all debts due or to become due from solvent debtors whether on account, contract, note or otherwise," etc. are taxable.

We think it is clear as a general rule that if a person is domiciled in a state, his personal property in contemplation of law has its *situs* in that state, and is taxable there. I. Cooley on Taxation, 86 and notes; Inhabitants of Lanesborough v. County Commissioners of Berkshire, 131 Mass. 424; Liverpool & L. & G. Ins. Co. v. Board of Assessors, 51 La. Ann. 1028, 25 South. Rep. 970, S. C. 72 Am. St. Rep. 483; Balk v. Harris, 124 N. C. 467, 32 S. E. Rep. 799, S. C. 70 Am. St. Rep. 606; Boyd v. Selma, 96 Ala. 144, 11 South. Rep. 393, 16 L. R. A. 729 and note.

There are some exceptions to this general rule. For instance where the investment of the funds of a non-resident is controlled by an agent of the owner, and loaned and reloaned by him to citizens of the state where he keeps the funds, the notes and securities taken and held by the agent in his possession and under his control these notes and securities have a business *situs* where they are kept which renders them there subject to taxation. Catlin v. Hull, 21 Vt. 152; In re Jefferson, 35 Minn, 215, 28 N. W. Rep. 256; 27 Am. & Eng. Ency. Law, (2nd ed.) 656.

There are other exceptions to the general rule, more or less involving this principle. But we have found no exception to this general rule which would apply to the facts of the instant case. It does not appear from the evidence that the money in question was invested in any sort of more or less permanent business in Chicago

and for aught that appears every dollar of it could be withdrawn at any time from the hands of the banks and firms with whom it was deposited. The only purpose for which complainant kept it in Chicago, so far as the record shows, was for speculation, and he states in his testimony that he did not have it assessed in Chicago or elsewhere than in Florida, and paid no taxes on it elsewhere.

We are of opinion that the statutes of Florida controlling this case clearly authorized the assessor of Walton county to assess the taxes on the $42,000.00 listed by the appellant.

It is also contended that the warrant issued by the assessor to the collector in 1903, had expired in 1905, under the provisions of Section 36 of Chapter 4322 Laws of 1895, and that the collector had no authority to proceed under it, to collect the taxes in dispute. That section is as follows:

"Sec. 36. If for any cause such warrant and assessment roll shall not be delivered to the tax collector on or before the first Monday in November of any year, or the tax collector shall fail or omit to obey the command thereof as therein required, it shall be the duty of the county commissioners to issue another warrant, in the same form as above provided, and the tax collectors are required to make all collections on or before the first Monday in April; and on or before the first Monday in July they are required to make a final report to and settlement with the comptroller and county commissioners; provided, however, that all warrants now outstanding, shall be of full force and effect, until all the taxes remaining unpaid shall have been collected and final report and settlement made by the tax collector with the state and county authorities, and all warrants heretofore issued or to be issued, shall be of full force and

effect in the hands of any successor, immediate or remote, of the collector to whom it may have been or may be so issued." It must be admitted that this section is lacking in clearness of expression. In order, however, to give some meaning to all the words of the section, our construction of it is that it is only necessary to obtain a new warrant from the county commisisoners where there has been a total failure or omission on the part of the collector to obey the command of the warrant issued by the assessor. Nothing of that sort is shown in the instant case, and we think the warrant under which the collector is acting is sufficient. Sams v. King, 18 Fla. 557, text 570.

There is no other question raised here which is covered by the allegations of the bill. The decree dismissing the bill is affirmed at the cost of the appellant.

TAYLOR and PARKHIL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.