**BERNARD EUGENE SMITH, et al., as Co-partners, trading and doing business under the firm name and style of Thomson & McKinnon, v. J. N. LUMMUS, JR., as Tax Assessor of Dade County, Florida, and HAYES WOOD, as Tax Collector in and for said County.**

6 So. (2nd) 625                                              En Banc
March 6, 1942                    Rehearing Denied March 24, 1942

Rinehart & Carroll, Charles A. Carroll, Hall, Cunningham & Haywood (New York City), and Alfred W. Haywood (New York City), for appellants.

Melbourne L. Martin, Ward & Ward, J. Tom Watson, Attorney General, and Lawrence A. Truett, Assistant Attorney General, for appellees.

THOMAS, J.:

A bill of complaint was filed by various persons, co-partners doing business as Thomson & McKinnon, against the tax assessor and tax collector of Dade County, Florida, seeking an injunction against them to prevent their assessing and collecting taxes on certain intangible personal property of the plaintiffs described as accounts receivable from customers or debit balances growing out of transactions which we will describe in our analysis of the bill of complaint.

The facts which we will give are those offered to be proved by the plaintiffs in support of their prayer for relief. The co-partnership is domiciled in New York where it conducts its business "as commission broker for purchase and sale of securities . . . on the New York Stock Exchange" and other exchanges located there and elsewhere. Its agents solicit business in offices in many cities, one of which is Miami.

The so-called agencies serve the firm by giving market quotations and other information to prospective customers, by furnishing them facilities incident to the business of the co-partnership, by accepting and sending to the main office at New York orders from clients for the purchase and sale of stocks and commodities.

The tax assessor has demanded that a return be made of intangible personal property subject to taxa-

tion under Classification C (Section 3 of Chapter 15789, Laws of Florida, Acts of 1931), specifically described as "all amounts appearing on the firm's records as indebtedness from customers dealing with the firm through its Florida agents."

It is asserted that the imposition of this tax, because the property is not within the jurisdiction of the state, would violate the 14th Amendment of the Federal Constitution and Section 12 of the Declaration of Rights of the Constitution of Florida by depriving the plaintiffs of property without due process of law. Jurisdiction of the state is challenged on the ground that the domicile of the owner of the debit balances is in New York and therefore no *situs* exists for taxation in Florida.

The debit balances have no reference to transfers of property of any kind "brought into the State or held or owned in the State" and "no merchandise or stock in trade" is sold here. These debit balances arise from transactions for sales and purchases elsewhere by plaintiffs for the account of customers whom the co-partnership serves as broker "on a 'marginal' basis" and they represent advances for the residue of the market price when but a part of it is paid by the customers. These loans are made only in another state and never in the State of Florida. No money or capital forming the source of such loans to customers is kept in this state. When such loans are made they are not evidenced by promissory notes or other writing and are secured by retention of the securities in New York with the right in the broker of transferring them for its protection. The stocks, on which the firm has advanced part of the purchase price and which it holds to secure the payment of the remainder due by the

customer, are held in the foreign state. The debt "is created by and under the laws of the State of New York, and independent of the laws of Florida." The co-partnership does not resort to the laws of Florida to effect collection of debit balances and the so-called agencies are not authorized to collect accounts. There is no competition with any business in Florida and the debit balances are not the result of any loans made by any representative here.

Whenever a customer wishes to pay to the firm any money in "reduction or discharge of a debit balance, or for margin or additional margin," he may deliver the money to the Florida agent who gives him in exchange a temporary receipt but the agent has no authority or control over the money received except to send it intact to New York or to place it in a bank account from which it may be withdrawn only by the principal office. Upon notice from the agent the customer's account in New York is then credited immediately with the amount of the payment.

None of the moneys received by the agents may be applied by them to the expenses of the agency, funds for that purpose being supplied out of the firm's general capital and held in a local bank account separate from moneys paid to the firm by customers. All records of customers' accounts are kept at the home office and it is from there that all formal notices, reports of transactions and statements are furnished. Approval and acceptance of customers is made entirely in New York and with reference to these matters agents in Florida have no authority. In the conduct of its business the co-partnership complies with the rules of the New York Stock Exchange and other ex-

changes, requirements of the laws of the State of New York and the Acts of Congress.

It was the opinion of the chancellor that the bill was without equity, so he dismissed it and the matter reaches us on an appeal from that final order.

In considering the propriety of the chancellor's action dismissing the bill of complaint we think it is well to use as an introduction to our observations the statement that we long ago recognized the general rule that personal property has its taxable *situs* in that state where the owner of it is domiciled, Hunt v. Turner, 54 Fla. 654, 45 So. 509, and therefore we feel that the question presented to us for determination is the one whether the circumstances outlined in the bill of complaint, as they appear from our somewhat brief analysis, bring into play any of the exceptions which from time to time have been applied to facts in particuar cases. Wood v. Ford, 148 Fla. 66, 3 So. (2nd) 490.

As we understand the representation made by the plaintiffs they are engaged in the business of taking orders for the purchase and sale of stocks and where they are bought by the customer, without payment of the full price, the remainder is loaned by the firm. To secure the obligation the broker retains the stock and the relationship between the broker and customer may be terminated and the stock transferred on demand of either party. To expand this business an agency was set up in Miami and the representatives there perform certain services in furtherance of the firm's business. Our study of the bill, however, leads us to the inescapable conclusion that in doing so they exercise no discretion whatever and perform purely ministerial duties. Thus, these agents may receive an

order for the purchase or sale of stock and accept payments of money from customers but they have no power to pass on the credit standing of any one who applies to buy stock on margin nor do aught with the money they receive than deposit it in a Florida bank to the firm's account in New York City and it is only by the firm that it can be withdrawn.

According to the bill an entirely separate account is kept for the purpose of paying salaries and operating expenses and so far as we can see the agency in the State of Florida is not self-operating and does not constitute an independent business. The plaintiffs have paid all ad valorem taxes assessed and levied against them in Florida and have also "paid all excise or occupational taxes which have been imposed by the State and the counties and municipalities in which its agents have acted. In addition thereto, the plaintiff firm has duly made returns and paid, in the various counties in which it has been so assessed, intangible personal property tax on the cash in bank held by its agents as of the first of each year in which so required, being the money of the firm held by the respective agents for the operation of the agency or temporarily in the agent's hands for remittance to the New York firm. None of such taxes are now due or unpaid."

Scrutiny of the plan of operation of the agencies in Florida clearly indicates that the property in question does not fall within the exception described in Hunt v. Turner, supra.

Taxes are the contributions from persons and property levied by the state for the support of the government. Therefore, whether they derive from tangibles or intangibles the use of them is the same and as they

are enforced by the state in its sovereign capacity persons and property not within its territorial limits cannot be subjected to its levy. Cooley on Taxation, Fourth Edition, Section 1, Chapter 1. By the same authority it is stated that this power of the state to tax does not "as a general rule extend to the intangible personal property of a nonresident, for such property must ordinarily be regarded as having its *situs* at the domicile of its owner." Cooley on Taxation, Third Edition, page 89.

The purpose of taxation being collection of money by the sovereign to meet the public needs and the cost of the maintenance of government itself it seems fundamental that there should be a corresponding privilege and protection for which taxation is imposed; therefore, if one domiciled in one state is maintaining a business in another and receiving all the advantages that the government of the latter and its various branches afford in the protection and the maintenance of the business a resulting obligation arises on the part of the taxpayer to pay his proportionate share in taxes to the public exchequer.

It seems to us from our study of the authorities that the exception to the rule that the tax on intangible personal property should be levied at the domicile of the owners arises in those cases where, because of activity in another state involving the property, they receive such benefits and protection under the laws of that state that they should make a contribution to its government.

It is conceivable that one in a business like that conducted by the plaintiffs could establish an office in a state other than the domicile, provide a fund there to be used by representatives in the purchase of stock

and in financing customers with authority on the part of the representatives to draw upon their business judgment and discretion in the operation of the business and thereupon become liable to taxation upon the property of the enterprise.

That, however, is not the situation with which we are dealing. It cannot be deducted that the plaintiffs are escaping the contribution they should make to the government of the State of Florida in order for them to conduct their business here. It is alleged in the bill of complaint, and admitted for the purpose of the motion to dismiss, that they pay taxes on all other property held by them within the borders of the state assessed upon an ad valorem basis in addition to excise and occupational levies. They complain solely because of the proposed assessment and levy on the so-called debit balances or accounts receivable. They resist taxation of these items because, so far as the local agency is concerned, the activity is a strictly representative one, wholly dependent upon the principal office. The transactions in Florida are, so it is urged, ancillary to the business operated at the domicile of the owner in New York. In the general business affairs of the plaintiff there are many features calling for the exercise of judgment and discretion. All of those features are absent from deals made in Florida. We reiterate when we call attention of the reader to the averments that the representatives of the firm in this state exercise none of such judgment or discretion but simply perform the clerical services incident to the business.

When we contrast the field of activity in Florida with that in New York, it is apparent that the former is by no means as extensive as the latter and we think

the restricted operation here refutes the argument that there is a business *situs* so distinct that taxation on intangibles is justified. This position is in harmony with the authority which we have already cited, Cooley on Taxation, Fourth Edition, Volume 2, page 1037, where it is said that no *situs* exists "where the agent in the state is a mere custodian or clerk or order taker."

When the relative activity of the principal office and the agency is borne in mind we are convinced that by paying the taxes which we have detailed in quoting from the bill the plaintiffs make their full contribution to the protection which the government of this state affords in the maintenance of an agency which cannot be called independent of the principal office.

Our conclusion harmonizes with the view of the Supreme Court of the United States in Curry v. McCanless, 307 U. S. 357, where it was stated (page 368): "The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business." This decision was referred to in Wood v. Ford, supra.

If we are to follow the rule which we stated at the outset, with reference to taxation at the *situs*, the state officials would go beyond the sphere of their authority if they assessed and collected taxes on the debit balances when all save certain mechanical activities with reference to them are, according to the allegations of the bill of complaint, controlled entirely from another state. We cannot find in the bill of complaint alleged facts which would warrant a construction placing the intangibles within the exception to the rule.

We emphasize that appellants allege they pay without complaint all ad valorem and excise taxes and likewise all taxes on intangibles that have a taxable situs in this state. The effect of what we have written is only to relieve them from the burden on intangibles the situs of which is fixed in the foreign state.

We therefore reverse the decree with instructions to the chancellor to proceed in accordance with the views we have given.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN, and ADAMS, JJ., concur.