**BERNARD EUGENE SMITH, et al., as co-partners, trading and doing business under the firm name and style of Thomson & McKinnon, v. J. N. LUMMUS, JR., as Tax Assessor of Dade County, Florida, and HAYES WOOD, as Tax Collector in and for said County.**

14 So. (2nd) 897                                    June Term, 1943

July 20, 1943                                              En Banc

Rehearing Denied September 20, 1943

416

*Rinehart & Carroll, George H. Salley, Hall, Cunningham & Haywood* (New York City) for appellants.

*J. Tom Watson,* Attorney General, *Lawrence A. Truett,* Assistant Attorney General, *Ward & Ward, Joseph Weintraub* for appellees.

CHAPMAN, J.:

This suit comes here for the second time. It originated in the Circuit Court of Dade County, Florida, and sought a restraining order against the assessment and collection of a tax on described intangible personal property owned by Thomson & McKinnon, a partnership, and the situs of the intangibles is alleged to be in New York and not Dade County, Florida. The prayer of the bill was designed to ultimately restrain Tax Assessor Lummus and Tax Collector Wood, each of Dade County, Florida, from the collection of an intangible tax on the described personal property. The chancellor sustained a motion to dismiss, for want of equity, and on appeal here the said order was reversed. See Smith v. Lummus, 149 Fla. 660, 6 So. (2nd) 625.

On the return of the mandate, an answer by the defendants was filed, which denied the material allegations of the bill of complaint. The cause was by the chancellor referred to the Honorable W. D. Bell, as Special Master, with directions to take testimony and make findings on both law and facts and recommendations as to a decree. The record discloses that the plaintiffs adduced but a single witness, James A. Kiernan, coupled with a number of exhibits appearing in the transcript and identified as Exhibits 1, 2, 3, 4, 5, and 6. The defendants did not offer any testimony before the Special

Master and counsel for appellees contend that the evidence adduced by the plaintiffs failed to establish the material allegations of paragraph 9 and subsections thereof identified in the bill of complaint as (1) to (X), inclusive.

The report to the chancellor as made by the Special Master was excepted to, and on hearing by the chancellor an order was entered ratifying and confirming the report and recommendations of the Special Master, and by appropriate order dismissed the bill of complaint, and an appeal therefrom has been perfected by the plaintiffs below to this Court, being the second appeal in this cause.

Counsel for appellants contend that the law of the case was settled or established in the former appeal in which we held that the allegations of the bill were sufficient for equitable relief as against a motion to dismiss made by the defendants below for want of equity. That the testimony of the witness Kiernan, coupled with the Exhibits 1, 2, 3, 4, 5 and 6 adduced by the plaintiffs fully sustain the allegations of the bill, when it becomes the lawful duty of the chancellor not to dismiss the cause but to enter a decree for the plaintiffs in accordance with the prayer of the bill. That the recommendations to the chancellor by the Special Master as to the form of the decree to be entered were clearly erroneous and the exceptions thereto filed by the plaintiffs should have been sustained.

Counsel for appellees agree that the law of the case was settled by this Court on the former appeal, but contend that the law is inapplicable to the facts proven by the plaintiff. That a variance now exists between the probata and allegata in that paragraph 9 of the bill of complaint which alleges that the assessments are void and the taxes imposed illegal because the domicilary ownership of the debit balances is in New York; and (2) the debit balances do not have a situs for taxation in the State of Florida. That the evidence adduced by the plaintiffs failed to establish these material issues and the decree of dismissal was the only one the chancellor could have entered.

Mr. Kiernan testified that he was a member of the partnership of Thomson & McKinnon and resided in New York

City, and supervised or approved customers' accounts of the firm. The firm is a member of the New York Stock Exchange and acted as brokers in securities and commodities on a commission basis. The firm transacted business on the stock exchanges in New York, Chicago, Toronto, and possibly Indianapolis. The firm has maintained an office in Miami, Florida, for several years and in other Florida cities during the Winter seasons.

The Miami office was under the management of Mr. Griffin and it had approximately twelve employees. The employees consisted of an: (a) order clerk; (b) telephone operator; (c) two board markers; and (d) customers' men employed to contact customers in placing orders. The Miami branch provided services for its customers viz: (1) a board room where customers could visit and observe the market; (2) price quotations appeared on the board in the customers' room; (3) the morning newspaper was supplied; (4) advice was supplied to customers on demand; (5) trade journals and information in abbreviated form were supplied; (6) the customers' men were highly trained and well educated about stock transactions; (7) the statistical department service maintained at the New York office was not supplied but could be supplied on demand; (8) customers' men are paid on a commission basis.

Mr. Griffin, manager of the Miami Branch, paid rentals and operation costs by checks drawn on a Miami bank identified as the "Manager's Account," and these funds are supplied from the New York office. The firm of Thomson & McKinnon opened an account with a Miami bank for a specified amount, which is referred to as the "Customers' Account," and deposits are sent there from the New York office. The manager of the Miami branch is authorized to make payment to customers of the Miami branch from the "Customers' Account" drawn on a Miami bank in a sum of not to exceed $5,000.00. Money had been transferred from the "Manager's Account" to the "Customers' Account" and customers paid therefrom by the manager. Orders from the Miami branch are transmitted to the New York office by private wires and Mr. Kiernan approves or disapproves the orders. The books

are kept in the New York office of transactions originating in the Miami branch and only memoranda made and preserved at the branch office. The Miami branch paid the City of Miami $550.00 occupational tax and paid taxes to the State of Florida in 1939 in the sum of $2,625.97, and $2,673.52 in 1940.

The procedure observed in the purchase of 100 shares of Chrysler stock on the stock exchange through Thomson & McKinnon, brokers, for instance, is about as follows: the purchaser appears in the Miami branch or calls it over the telephone, when a confidential report of the prospective customer is obtained, being Plaintiffs' Exhibit No. 2. The application is sent by the Miami Branch office to the New York office, and is approved or disapproved by Mr. Kiernan. If the account is accepted the customer is requested to sign a "Customer's Agreement," being plaintiffs' Exhibit No. 4. If the customer purchases the stock on margin, he pays e.g. 40% cash to the manager of the Miami branch and the same is by him transmitted to the New York office and the stock purchased by Thomson & McKinnon. The broker advances 60% of the purchase price of the 100 shares and retains the physical custody of the stock as security under the authorization agreement viz:

"AUTHORIZATION

."Provided for by Resolution of the Governing Committee of the New York Stock Exchange Adopted February 18, 1932.
--------------------------------------, 1943.

"Messrs. Thomson & McKinnon,
  11 Wall Street,
  New York City.

Dear Sirs:

"You are hereby authorized by the undersigned to loan from time to time, either to yourselves as brokers or to others, any or all stocks, bonds and other securities which you may now or hereafter hold for the account of the undersigned, either separately or together with other securities.

"The authority herein granted shall remain in full force

and effect until you shall receive written notice of its revocation.

Very truly yours,

(Signed) ................................................ "

(Purchaser)

If Thomson & McKinnon pays $100,000.00 for 100 shares of Chrysler stock on the New York Exchange for the accommodation of a customer purchasing through their Miami branch, it possibly becomes a profitable transaction for the firm. Thomson & McKinnon receive a commission as brokers and interest on the "debit balance" due by the Miami customer and payment secured by the Chrysler stock. The 100 shares of stock is the property of the Florida customer pledged by him for the payment of the money loaned. Paragraph 7 of the bill of complaint alleges that the domiciliary ownership of the "debit balance" is in New York. We are unable to find the testimony in the record to support this allegation. The customer resides in Florida; the original payment was made by him in Florida at the branch office; interest and broker commissions are paid in Florida; Florida law protects the branch office and business transactions had therein; Florida courts provide forums for adjudication of differences arising out of the transactions, and for these several reasons it cannot be said that the "debit balances" originated in New York, as alleged, to the exclusion of the State of Florida.

It is our conclusion that the appellants failed to establish by competent testimony the material allegations of the bill of complaint and we fail to find error in the order of the chancellor dismissing the cause on final hearing. See Suttles v. Northwestern Mut. Life Ins. Co., 193 Ga. 495, 19 S.E. (2nd) 396; Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 Sup. Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229; Curry v. McCanless, 307 U.S. 357, 83 L.Ed. 1339, 59 Sup. Ct. 900, 123 A.L.R. 162; Liverpool & L. & G. Ins. Co. v. Board of Assessors, 221 U.S. 346, 55 L. Ed. 762, 31 Sup. Ct. 550.

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.

TERRELL, THOMAS and ADAMS, JJ., dissent.