WIGGINTON, Acting Chief Judge.
The Comptroller of Florida has appealed from an adverse decree holding that accounts receivable owned by Burroughs Corporation, a non-resident legally domiciled in the State of Michigan, were not subject to the imposition of an intangible tax under the statutes of this state. The facts are not in dispute and the controlling question is exclusively one of law.
In his decree the chancellor found the following facts pertinent to the issues in the case. Burroughs, a Michigan corporation, maintains branch and sub-offices in various cities of Florida. The company’s business conducted in Florida as well as in several other southeastern states, is supervised by and controlled from a regional office located in Georgia. Burroughs’ business consists of the sale and servicing of business machines, as well as supplies used in connection with their operation. Each branch office is directed by a manager who is subordinate to the regional manager located in Georgia, but who directs the salesmen and other employees of the company working in and out of the branch office. In connection with each branch office there is a warehouse in which is maintained an inventory of various machines sold in the trade area. The branch office also maintains repair facilities for the servicing of the business machines sold in the usual course of business. Cash received by the branch office from sales and servicing the machines represents only a small portion of the business conducted by Burroughs. The vast majority of sales are on credit, the unpaid balance of which is secured by unrecorded retain title contracts. Neither the manager nor any other employees of the branch office are authorized to extend credit to any prospective customers. Orders for the purchase of equipment on a credit basis are transmitted to the regional office for acceptance or rejection. Upon acceptance of an order, the customer is invoiced from the regional office, a copy of which is sent to the branch manager and constitutes his authority to deliver the equipment called for in the order. All billings are made from the regional office, including reminders on delinquent accounts. The second reminder that an account is delinquent is sent to the branch manager for his information, but there is no fixed procedure requiring action by the latter. He is expected to encourage the purchaser to cure the delinquency whenever possible.
All records of accounts receivable, including the retain title contracts, are physically maintained at the regional office in Georgia. In the event of default in payment of the purchase price, the equipment may be picked up by a representative of the branch office if this can be done agreeably to the purchaser. Only the regional office may authorize legal action to repossess equipment in the event of default in payment. Less than one per cent of the time of its employees is expended by the branch office in making collections on delinquent accounts. A portion of the company’s business of servicing and repairing machines is paid in cash by the customers. Where, however, credit for service charges is requested, it is extended only by the regional office, and all billings for such charges are made by that office. Accounts receivable for service and repair charges are likewise kept and maintained in the regional office, and collections are made from that source.
It is the comptroller’s contention that under the foregoing system of operation all accounts receivable owned by Burroughs for merchandise sold in Florida, and for the repair and servicing of equipment in this state, are subject to the imposition of an intangible tax pursuant to the provisions of F.S. Section 199.07, F.S.A., which is as follows:
“It is hereby made the duty of every person, firm or corporation in this state owning or having control, management, or custody of intangible personal prop *597 erty which is subject to taxation under the laws of Florida, including trustees, executors, administrators, receivers and all other fiduciaries, to file a sworn return of the same with the county assessor of taxes in the proper county on or before the first day of April of each and every year, giving the character, description, location and full cash value of same according to the best of the knowledge and belief of the person making the return. * * * ”
At the outset it should be clearly borne in mind that this controversy does not involve the obligation of Burroughs, a nonresident corporation, to pay the required occupational license tax for engaging in business in Florida. Nor does it involve the obligation of this corporation to pay all ad valorem real and personal property taxes assessed against the property owned by it and located in this state. Similarly, it does not involve the obligation of Burroughs to pay all sales and use taxes for which it is obligated under the applicable statutes of Florida. It is presumed that all such taxes so levied and assessed have been paid. The precise problem with which we are concerned relates only to the question of whether accounts receivable arising from sales and service in the State of Florida, under the system of operation employed by Burroughs for the conduct of its business in this state, are subject to the imposition of the intangible tax called for in the above quoted section of our statutes.
It is undisputed that Burroughs is a non-resident corporation legally domh ciled in Michigan. It is established in this jurisdiction that intangible personal property accompanies the person of the owner and is taxable at his domicile, unless it has acquired a business situs elsewhere for taxation purposes.[1] Before intangible property owned by a non-resident of Florida may be subject to the imposition of an intangible tax by this state it must be made to appear that Florida has acquired taxing jurisdiction over the debt or obligation by reason of the fact that the written evidence of debt itself has acquired a business situs in this state.[2] The comptroller contends that the accounts receivable owned by Burroughs, the records and written evidence of which are kept and maintained by the company at its regional office in Georgia, have acquired a business situs in this state because of the method by which the company operates, and that the chancellor erred when he held to the contrary.
In Smith v. Lummus [3] the partnership of Thompson and McKinnon, whose legal domicile was in the State of New York, sought an injunction restraining the taxing officials of Dade County from assessing and collecting taxes on certain intangible personal property described as accounts receivable from customers growing out of business transactions conducted by the partnership in Florida. The complaint alleged in detail the manner in which the partnership conducted its business through its Florida branch offices. The accounts receivable involved in Smith consisted entirely of debit balances owed to the partnership by purchasers of corporate stock. Orders for the purchase of stock were taken by branch employees who had no authority in connection with the transaction except to receive and issue a temporary receipt for any payments made by the customers on the purchase price of stock, and to promptly remit such payment together with the order to the partnership office in New York. The order was subject to acceptance or rejection only by the New York office. If accepted, the customer’s account was credited with the payment made by him and the company advanced to the customer as a loan the balance required to complete the purchase of stock so ordered. The account receivable *598 was not evidenced by promissory notes or other writing, but was secured by retention of the security in New York with the right in the company to transfer it for its protection in the event of default in payment of the balance due for the purchase price. No money or capital forming the source of the loan by the company to the customer was kept in this state. The stock certificates held by the company as security for the account owed were held in New York. The debt was created by and under the laws of New York, independent of the laws of Florida. The capital used by the company in making loans to its customers was not in competition with Florida capital. All payments made by customers in reduction of their accounts were received by the Florida branch office. These funds could not be applied by it in defraying the expense of the agency, but were promptly remitted to the New York office for credit to the customer’s account. All records of the accounts receivable from customers were kept and maintained in the New York office from which all formal notices, reports of transactions and statements were furnished. The chancellor dismissed the complaint in the trial court for its failure to state a cause of action, but on appeal the decree of dismissal was reversed and the cause remanded for trial. It was held by the Supreme Court that the facts alleged in the complaint, when taken as true for the purpose of considering the motion to dismiss, clearly revealed that the accounts receivable owned by the non-resident plaintiff partnership had not acquired a business situs in the State of Florida, and therefore were not subject to imposition of the intangible tax prescribed by the statute of this state.
The principles of law for determining whether intangible property owned by nonresidents of Florida has acquired a taxable situs in this state as pronounced in the decision of the Supreme Court abovemen-tioned were not modified nor receded from when that case made its second appearance in that Court. After the decree dismissing the complaint was reversed and the cause remanded, answer was filed by the taxing authorities and evidence adduced. Plaintiff failed to establish by competent proof that the domiciliary ownership of the accounts receivable was in the State of New York, a fact specifically alleged in the complaint. Upon the evidence contained in the record the chancellor found that the plaintiff partnership had failed to establish the allegations of its complaint, and therefore dismissed the case with prejudice. Upon appeal from that decree the Supreme Court agreed with the findings of the chancellor and rendered its decision of affirmance.[4] The comptroller appears to take the position that this decision modified in some manner or receded from the principles of law announced in the first appearance of the case in that court. We cannot agree that such was the effect of the second decision.
The principles pronounced by our Supreme Court in the first decision rendered by it in Smith v. Lummus appear to be consistent with the weight of authority represented by decisions of our sister states.[5]
In Tax Commission v. Kelly-Springfield Tire Co., 38 Ohio App. 109, 175 N.E. 700, it was held by the Court of Appeals of Ohio that where a non-resident owner has divorced the credits or accounts receivable owned by him from his use, control and management, and vested them in another residing in a different state, where such credits are used by such other persons in the conduct of his business, then such receivables may be taxed as intangible personal property in the latter state. It was held in that case, however, that although the debt consisting of accounts receivable was created by the act of the branch office, the control and disposition of the debt was exercised exclusively by the home office of *599 the corporation. The branch office had no interest in the accounts receivable, nor was it permitted to utilize any of the proceeds in the conduct of the local branch office. The branch manager had no authority of management or control over the accounts receivable. It was therefore held that the intangible property described as the credits or accounts receivable owned by the foreign corporation were not subject to the imposition of intangible taxes by the state in which the branch office was located. The court held that before the state where the branch office was operated could validly impose an intangible tax on the company’s accounts receivable, the element of separation of the intangible property from the domicile of the owner, and fairly permanent attachment to the foreign state in which the branch office is located should appear, together with some business use of them or some power of managing, controlling, or dealing with them in a business way.[6]
In commenting upon the exception to the general rule that the taxable situs of personal property is at the domicile of the owner, the Supreme Court of California said:
“The authorities generally agree that where the owner is not a resident of the state in which the credits are situated, and the credits are in the possession and control of a local agent, who holds them for the purpose of transacting a permanent business, and of investing and reinvesting the proceeds from the principal or interest in such manner that the property or credits come in competition with the capital of the citizens of the state in which the agent resides, that the credits have a situs for the purpose of taxation in the place of residence of the local agent.” [7]
Several common elements are found in each of the decisions which adhere to the localization and integration concept of determining the business situs of intangible property for the purpose of taxation. These common elements consist of proof establishing a continuous course of business or series of transactions as distinguished from sporadic transactions and more or less permanency of location of the credits within the taxing state. Present also is proof establishing independent management and control of the credits as distinguished from custody and safekeeping. Proof is uniformly required to establish that the credits of the non-resident owner are in possession and control of a local agent who manages them in the transaction of a permanent business, and of investing and reinvesting the proceeds from the principal or interest under circumstances where the property is placed in competition with local capital in the area where the agent operates.
In support of his position the comptroller refers us to the United States Sugar Corporation case as authority for the proposition that the general rule which holds the taxable situs of intangible property to be at the domicile of the owner cannot be evoked to defeat the right of Florida to impose intangible personal property tax.[8] The Sugar Corporation decision was concerned with an interpretation of a different section of the statute which requires the payment of intangible property tax on all mortgages, deeds of trust or other liens on Florida real estate. The statute there considered requires the payment of such tax before the mortgage or deed of trust is entitled to record or enforceable in any of the courts of this state. No such specific *600 language is contained in the statute under consideration in this case. The Supreme Court in the Sugar Corporation case also held, however, that the mortgage on Florida real estate owned by a non-resident would not be subject to the imposition of intangible tax thereon unless and until the ■owner either attempted to have it placed of record in Florida, or sought the aid of Florida courts for its enforcement.
The comptroller urges that the preferable rule with respect to determining the business situs of intangible property for tax purpose is that followed by the State of Georgia. It is held in that jurisdiction that “When a nonresident corporation engaged in business in this State becomes the owner of accounts receivable arising out of the business conducted in this State, such credits or accounts receivable have a tax situs in the county wherein such business is conducted, notwithstanding the orders taken for merchandise sold in this State are filled the shipments thereof made, the credit of the customers passed upon, and the books of account kept, at a point without the State of Georgia.”[9] A similar rule is followed by Louisiana by virtue of the particular wording of the tax statute effective in that state.[10] A like rule is followed by a few other states of this country, but they appear to represent a distinct minority view of the principle under consideration. These courts lay great stress upon the fact that the debt was owned by a local citizen and arose as a result of the non-resident’s business activity in that state, and that the local courts were available to the non-resident for the enforcement of his chose in action against local citizens. The reasons expressed by these courts in their determination of the business situs of intangible property were considered by the Supreme Court of Florida in the first decision rendered in Smith v. Lummus, supra, and were expressly rejected.
The evidence in this record establishes, and the chancellor found, that the documents evidencing the accounts receivable, together with all records pertaining thereto, are owned by a non-resident of Florida and are kept, maintained, managed and controlled outside of this state. None of the capital represented by this property is. utilized in the operation of Burroughs’ branch and suboffices in Florida, nor is it used in competition with local capital. The debts consisting of accounts receivable were created by and under the laws of Georgia where credit was extended, and not under the laws of Florida. No separation of the receivables from the foreign domicile of the owner, nor attachment to the branch offices in Florida, is shown by the evidence. There has been no integration of the capital' represented by the receivables into the business of the branch and suboffices of Burroughs in this state, but are a part of the corporation’s general assets located elsewhere. It therefore must be held that the accounts receivable here in question have not acquired a business situs in Florida, and are not subject to the intangible tax sought to be imposed.
The decree appealed is accordingly affirmed.
RAWLS, J., concurs.
STURGIS, J., specially concurs.

.State ex rel. Seaboard Air Line R. Co. v. Gay, 160 Fla. 445, 35 So.2d 403; Smith v. Lummus, 149 Fla. 660, 6 So.2d 625.

. State ex rel. Seaboard Air Line R. Co. v. Gay, supra note 1.

. Smith v. Lummus, supra note 1.

. Smith v. Lummus, 153 Fla. 415, 14 So.2d 897.

. See annotations contained in 143 A.L.R. 361 et seq., 76 A.L.R. 80G.

. Tax Commission et al v. Kelly-Springfield Tire Co., 38 Ohio App. 109, 175 N.E. 700.

. Westinghouse Electric & Mfg. Co. v. Los Angeles County, 188 Cal. 491, 205 P. 1070; see also In re Harris, Upham & Co., 194 Old. 155, 148 P.2d 191; Board of Tax Supervisors of Jefferson County v. Baldwin Piano Co., 296 Ky. 673, 178 S.W.2d 212.

.State ex rel. United States Sugar Corp. v. Gay, (Fla.1950) 46 So.2d 165.

. Colgate-Palmolive-Peet Co. v. Davis, (1943) 196 Ga. 681, 27 S.E.2d 326.

. General Electric Co. v. Board of Assessors, 121 La. 116, 46 So. 122.