RAWLS, Chief Judge.
The determinative question posed by this appeal is: May the State of Florida levy an intangible tax on the accounts receivable of a corporation domiciled in Florida, when the accounts receivable were generated by the sale of property outside the State of Florida, and the accounts receivable have already been subjected to an intangible tax by another state ?
The facts which give rise to this question which is of paramount concern to Florida domiciled corporations are not in dispute. Florida Steel is a Florida domiciled corporation engaged in the manufacturing, fabricating and selling of steel products. Florida Steel has three mills— two in Florida and one in South Carolina —in which it melts scrap metal, casts the melted metal into ingots, and rolls the ingots into steel reinforced bars. About one half of the ingots are shipped to Florida Steel’s fabricating plants located in North Carolina, South Carolina, Georgia and Florida for further processing. Upon reaching the fabricating plants, the bars are bent, shaped and processed to meet the plans and specifications of a particular customer for a specified construction job. A customer who desires fabricated steel places his order directly with the Florida Steel fabricating plant closest to his construction job site. Each fabricating plant bills its own customers, and the customers remit to that plant. The proceeds from the collection of the accounts receivable are deposited in bank accounts located in the city of the fabricating plant’s site. A *625 copy of each invoice issued by these out-of-state fabricating plants is sent to Florida Steel’s main office in Tampa, Florida, where a computer makes up a receivables ledger. A copy of the ledger covering out-of-state sales is sent to the regional office in Charlotte, North Carolina, while the hard copy of the ledger remains in Tampa, Florida.
When a customer makes a remittance to a fabricating plant in either Georgia or North Carolina, the money is deposited in a bank in either Atlanta or Charlotte. These bank deposits are ultimately transferred to a bank located in Cleveland, Ohio. No deposits in the bank accounts in Charlotte or Atlanta are used to fund operations of the fabricating plants located in either Georgia or North Carolina. All expenses of these fabricating plants in excess of $1,000.00 are paid out of the Cleveland bank and all other expenses out of a Tampa, Florida, bank account.
The regional office of Florida Steel located in Charlotte, North Carolina, contains a regional credit manager who handles all of the non-Florida accounts receivable. This regional credit manager is supervised by and responsible to the home office of Florida Steel located in Tampa, Florida. Florida Steel’s president and other officers located in the home office in Tampa have the ultimate authority to write-off accounts receivable as bad debts.
During the years 1969 through 1972, Florida Steel paid intangible taxes to the States of Georgia and North Carolina on accounts receivable generated from sales at fabricating plants located therein. Florida Steel did not include its Georgia and North Carolina accounts receivable in its intangible tax return filed with the Florida Department of Revenue. The Department of Revenue contends that even though these accounts receivable have been taxed by the States of Georgia and North Carolina, respectively, they are also subject to the Florida Intangible Personal Property Tax as they are accounts receivable of a Florida domiciled corporation.
We first examine the applicable portions of our state laws which concern the levying of an intangible tax on accounts receivable. Florida Statute 199.-032(1) levies a tax on all intangible property with certain specified exceptions. Intangible property is defined by F.S. § 199.-023(1) as: “. . . all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents . . . .” F.S. § 199.101 (1969) (now 199.052[1]) imposes the duty on every person (i. e. corporation) who is a resident of this state who owns or has control, management or custody of intangible personal property which is subject to taxation to return same for taxation. It is clear from the above recitation from Chapter 199 of the laws of this state that the legislature has imposed an intangible tax on accounts receivable owned by, or in the custody of, or in the control of, or management of, a Florida domiciled corporation. Florida Steel has never contended that it did not own the accounts receivable in question.
The next matter to be considered is whether that portion of Florida Steel’s accounts receivable which have been taxed by North Carolina and Georgia are exempt from taxation by Florida. A careful review of Chapter 199 of the Laws of Florida (1969) and (1971) reveal that certain intangible property is exempt from taxation.[1] However, no exception is provided for accounts receivable owned by Florida domiciled corporations which have been taxed by other states.[2] A study of the legislative history of Chapter 199 reflects that in bygone years the legislature did provide a vehicle by which certain “foreign intangibles”, owned by Florida corporations, could be exempt from the intangible personal property tax.[3] This par *626 tial exemption was removed by the 1971 Legislature.[4] In light of this legislative history, coupled with the absence of an applicable exemption in the current Chapter 199, leads us to the inescapable conclusion that the lawmakers of this state have taxed accounts receivable owned by Florida corporations even though the accounts receivable were generated by sales in other states and have been taxed by other states.
The final question now remaining is: Does this taxation by Florida of accounts receivable owned by its domiciled corporations, which have been taxed by other states, result in an unlawful burden on interstate commerce so as to violate Article I, Section 8, of the Florida Constitution and the Fourteenth Amendment of the Constitution of the United States? Intangibles have always been considered valuable property rights which, through a fiction of the law, were taxed to the domicile of the owner. This fiction is traceable to the Roman Maxim: “Mobilia sequeintu personam inmobilia sitúa” (Movable things, or movables follow the person, immovable their locality).
In their infancy, corporations confined their business activities to the state which gave them their very life and existence. As corporations passed from frailing infants to sprawling multistate and multinational giants which affected business life and drew economic wealth from states and nations other than their legal home, legislatures and courts recognized that to allow only the state of incorporation to tax the intangibles of the corporation was an anachronism of the economic life of America.[5] Legislatures and courts began to look to the realities of today’s economic life, and states in which corporations had acquired what is termed a “business situs” other than the domiciliary state were allowed to place a tax on the corporations’ intangibles. The idea being that these foreign corporations were participating in the benefits and protection of the sovereign’s power, and thus should contribute their fare share to the cost of government.[6] The taxation of accounts receivable by a state in which a corporation has acquired a business situs does not preclude the corporation domiciliary state from also levying an intangible tax on accounts receivable, as a corporation must pay its share of the cost of government to the sovereign from which it derives its very existence.[7] The situation is to be distinguished from tangibles which are only taxable at the site of their locality, as only one sovereign may control them and they may derive benefits and protections from only one sovereign.[8]
Before concluding, we feel compelled to comment as to the arguments of the parties directed to “business situs”. The parties involved in this litigation have devoted a great deal of space in their briefs and time at oral argument to whether, under this Court’s decision in Green v. Burroughs,[9] Florida Steel has acquired a business situs in North Carolina or Georgia. As pointed out above, whether Florida Steel has acquired a business situs in North Carolina and Georgia makes no difference as to the outcome of this cause. For this reason, we do not go into the Green v. Burroughs decision or into what is required to establish a business situs in the State of Florida or in any other state. The parties have also devoted a great deal of time and attention to the effect of F.S. § 199.112 (1973) which was enacted after this Court’s deci *627 sion in Burroughs. Again, as this statute deals with accounts receivable and other intangibles which arise solely from the sale of goods in this state, we do not feel that it is applicable to the current litigation.
Last, while we question the wisdom of the legislature in failing to provide an ex-, emption to Florida domiciled corporations who have acquired a business situs[10] in other states and paid an intangible tax to that state, and while we feel that the legislators’ actions in this area may result in Florida domiciled corporations abandoning this state in preference to states which offer more favorable taxable domiciles, it is the function of this Court to construe the law and not to promulgate laws in the name of judicial activism.
The judgment appealed is affirmed.
BOYER, J., and MELVIN, WOODROW, Associate Judge, concur.

. F.S. § 199.072 (1971) and F.S. § 199.031 (1969).

. Chapter 199, Laws of Florida (1969) and (1971).

.Florida Statutes 199.372(3) and 199.373 (1969) provided a method by which certain “foreign intangibles” could be exempt from the Florida Intangible Personal Property Tax provided a franchise tax was paid.

. Laws of Florida (1971), Chapter 134.

. United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748 (1961).

. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939) ; and Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358 (1942).

. Even though Curry v. McCanless, supra, leaves some doubt as to whether two states may levy a tax on the same intangibles, our reading and understanding of the later case of Utah v. Aldrich, supra, is that such taxing is permissible if both sovereigns provide some benefits and protections.

. Curry v. McCanless, supra, and Utah v. Aldrich, supra.

. Green v. Burroughs, 137 So.2d 595 (1 Fla. App.1962).

. We specifically do not offer any opinion on whether the accounts receivable involved in this case have acquired a business situs in North Carolina and/or Georgia.