**CLARENCE M. GAY, as Comptroller of the State of Florida, et al., v. BESSEMER PROPERTIES, INCORPORATED, a Delaware Corporation.**

32 So. (2nd) 587
November 21, 1947

June Term, 1947
Division B

*J. Tom Watson,* Attorney General, *Sumter Leitner* and *T. Paine Kelly,* Assistant Attorneys General, for appellants.

*Alley, Drew, Burns & Middleton,* for appellee.

PER CURIAM:

Taxes on intangible property having been assessed against Appellee, it instituted this suit. At that time the Honorable J. M. Lee was Comptroller of the State of Florida. Later Mr. Lee died and C. M. Gay, having been appointed his successor, was substituted as a party defendant. The suit to adjudicate the validity of the assessment and to enjoin the collection of tax. During the pendency of the suit the amount of the tax was by order of court required, under protest, to be deposited with the Comproller to be held by him subject to order of Court.

When issues were made up the cause was referred by the Court to a Master with directions to take and report testimony with his findings of law and fact and to return the same with his recommendations to the Court. This was done.

Exceptions to the report were filed and, after argument and consideration, the Court entered its decree.

The report of the Master, Mr. Horner C. Fisher was, inter alia, as follows:

"Pursuant to the order of my appointment, I now make and submit the following as my findings of fact, conclusions of law and recommendations. (The numbers within parentheses refer to pages in the Reporter's transcript of testimony. Exhibits are referred to in abbreviated form, as for example P. Ex. No. 8 would refer to Plaintiff's Exhibit No. 8.)

I. *Finding of Fact.*

"1.   The Plaintiff, Bessemer Properties, Incorporated, was incorporated under the laws of Delaware in 1936 from the consolidation of four Delaware and five Florida corporations.   By the consolidation agreement, which became its character, it was provided that its principal office in the State of Delaware should be located at Wilmington, New Castle County, (P. Ex. No. 16; Stipulation 109).   A few days later it secured a permit to transact business in Florida in accordance with Chapter 5717, Laws of Florida, 1907, as amended, the statute relating to the qualification of foreign corporations to do business in this State (D. Ex. No. 5).

"2.   All of the capital stock of Bessemer Properties, Incorporated, is owned by Bessemer Investment Company, a Delaware Corporation (76,98).   The stock of the latter is held mostly in trust for junior members of the Phipps family, being the third generation, by Bessemer Trust Company, an incorporated trust company in the State of New Jersey (102-3).   Approximately two out of fifteen of such beneficiaries are residents of Florida (103-4).

"3.   The officers of the plaintiff, Bessemer Properties, Incorporated, are Mr. Henry C. Phipps, President, a resident of Palm Beach, Florida; Mr. David T. Layman, Jr., Secretary-Treasurer and General Manager, a resident of New York City, N. Y.; Mr. Howard Phipps, Vice-President, a resident of Westburg, Long Island, N. Y.; Mr. Roulhac Anderson, Assistant Secretary and Treasurer, a resident of New York City, N. Y., and Mr. R. C. Alley, Assistant Secretary and Treasurer, a resident of Palm Beach County, Florida, and Mr. H. W. Robbins, Cashier, a resident of New York City, N. Y. Henry C. Phipps and John S. Phipps, two of the directors, are residents of Florida; Howard Phipps and David T. Layman, Jr., the

other directors, reside in New York (26, 49, 76, 96, 100-102; D. Ex. No. 2).

"4. The plaintiff maintains three business offices, a head office at 465 East 57th St., New York City, N. Y., and two subsidiary offices in Florida, one at Phipps Plaza, Palm Beach, and the other at 1317 Biscayne Boulevard, Miami. J. F. Riley, Jr. is Manager of the Palm Beach Office and Roy H. Hawkins is manager of the Miami office. Each is answerable to and operates under the direction and supervision of David T. Layman, Jr., the Secretary-Treasurer and General Manager of the Corporation, in New York, where questions of corporate and business policy are determined and all decisions other than routine are made (17-20; 44-46; 49, 73, 76).

5. The largest investment of plaintiff is in the State of Florida (95; D. Ex. 1.4). This is in real estate, urban and rural, improved and unimproved, and mortgages upon and rentals and other income derived from real estate (18; 45-46). The Palm Beach office has direct charge of properties in Palm Beach County, Broward County and the eastern half of Martin County (18). The Miami office has direct charge of properties in Dade County, certain farm properties at Port Mayaca in Palm Beach County and an orange grove in Martin County (45). These two division offices of plaintiff are separate units operating each within the territory assigned to it and directly under and subject to the direction of the plaintiff's New York office (46).

"6. Each of the two Florida offices maintains its own subsidiary set of books and records according to a bookkeeping system prescribed by the New York office or its accountants (31, 57, 74, 88; P Ex. No. 8). Detailed reports are forwarded from the two Florida offices and also from an agency in Utah to the New York office, where is compiled a complete copy of the subsidiary records, all of which are combined with other records of the New York office in its head office ledger. That office maintains, besides its general ledger, cash books, minute books, stock certificate books and other books of account required to encompass all of the business affairs of the plaintiff regardless of origin (73-74).

"7. On plaintiff's income tax returns for the years 1940-

1-2-3, which were filed in the Florida District Offices of the United States, Internal Revenue Service, plaintiff's address was given as Palm Beach, Florida, and it was stated that the books of the corporation were located at Palm Beach (D. Ex. 1-2-3-4). Nevertheless, based upon positive and unimpeached testimony in the record, I find that this statement in the income tax returns was a mistake, and that in fact these returns compiled and prepared in the New York office from the complete books and records of that office, and that a complete tax return could not have been prepared from the books and records of the Palm Beach office which covered only the limited, though substantial, business there conducted (43, 55, 90-92). The audits of the Internal Revenue Department were in plaintiff's Jersey City and New York office (107).

"8. The contrast between the overall authority of the New York office and the limited authority of the two Florida offices of plaintiff is evidenced by the course of business followed in the handling of funds. Each Florida office maintained two bank accounts, a Main Account and a Special or so-called Paymaster Account. Funds derived from the operation of each Florida office were deposited in its main account but were subjected to withdrawals therefrom only by the checks of the New York office or officers. Routine disbursements in each Florida office were made from its Special or Paymaster Account. Vouchers supporting these disbursements were forwarded to the New York office which thereupon reimbursed the Special Account accordingly to bring it up to an average operating level determined by that office. No funds from outside of Florida were ever deposited in either Florida main account nor from the other Florida office (21-22; 24-25; 31-34; 48, 50-53; 58-59; 90 P. Ex. 7a-d). The New York office also maintained and maintains its own so-called Main Accounts in New York and in Jersey City, N. Y. (98, 104). It paid the income taxes of plaintiff (71-99). Each Florida office paid from its Special Account taxes upon the properties within its own limited jurisdiction (36-38, 60).

"9. During the years 1941-2-3 the plaintiff owned very large quantities of real estate in Florida. In 1941, its Florida real estate was valued for taxation at over $5,800,000. (61,

62; 113-114). Its paid State, County and Municipal taxes upon its Florida estate in the years 1937 to 1943 aggregating in excess of $1,160,000.00, and in the particular years 1941-2-3 aggregating in excess of $500,000.00 (38-39; 60-61). In the years of 1937-1944, it paid Florida State Unemployment Taxes aggregating over $25,000.00 (62-63). It regularly returned for taxation its cash in Florida banks, and its mortgages, notes and other accounts receivable originating in its Florida offices. Each of these offices assembled its own data upon such intangibles and forwarded same to Mr. R. C. Alley in Palm Beach County, who consolidated this data into an intangible return filed with the Palm Beach County Tax Assessor in each of the years 1941-2-3 (63, 72, 105-106). Evidently these intangible taxes were duly paid, as no complaint concerning their non-payment appears and the payment of substantial intangible taxes was reported in the plaintiff's income tax returns, copies whereof appear in evidence (D. Ex. 1, 2, 3).

"10. This suit involves a contest over the legality of intangible taxes assessed against Bessemer Properties, Incorporated, by reason of its ownership of certain stocks of Union Trust Company of Pittsburgh, W. R. Grace & Co. and certain time warrants of International Paper Company, more particularly described in paragraph VI of the bill of complaint herein. Excepting the 460 shares of W. R. Grace & Co. common stock, which were purchased by plaintiff on December 9, 1937, with funds loaned to plaintiff by Bessemer Investment Company, all of these intangibles were contributed to plaintiff by Bessemer Investment Company, its sole stock-holder, in March 1938 (77-78, 86-87; P. Ex. No. 11). In the original transfer there were 500 shares of Union Trust Company common, later converted into 2500 shares by that company and exchanged for same in 1942 (80-81; P. Ex. No. 12, 13, 14). The International Paper Company warrants were sold in 1941 and 1942 (87-88).

11. None of the stock certificates or warrants has ever been physically within the State of Florida. Prior to the contribution to plaintiff, they were kept in the vaults of Bessemer Investment Company in Jersey City, New Jersey, and they remained there until November 1942, when they were

removed to its vaults in Wilmington, Delaware, and were still there at the time testimony was taken in this cause (84-85, 87). They have never been carried or shown on the books of either Florida office of plaintiff nor were they under the control thereof (22-23, 3, 46-47, 75; Chart of Accounts P. Ex. 8; 41-43). No dividends were ever collected or received in Florida or by either of plaintiff's Florida offices nor shown on their books nor deposited in their bank accounts (25, 54, 99). All such dividends were collected and received in New York, deposited in the Commercial Trust Company, Jersey City, New Jersey (85-86-88). It does not appear that any moneys derived from Florida operations of plaintiff were ever used in the acquisition of these intangibles, the taxation of which is in suit (97-98).

"12. The plaintiff has paid no intangible tax to either the State of New York or to the State of Delaware or these securities (Stipulation, 95). It has never secured a permit to do business in New Jersey under the laws of the State and secured none to do business in New York under the laws of that State until January 1946 (Stipulation, 115). Plaintiff does no business in the State of Delaware, except keeping its securities in a vault there. It maintains a resident Agent, Delaware Registration Trust Company, at Wilmington, (97, 109). It pays an annual Delaware franchise tax, as it does a Florida corporation tax (Income Tax Returns, D. Ex. 1-2-3).

"13. In 1939 Mr. R. C. Alley, in behalf of plaintiff, revealed to the Tax Assessor of Palm Beach County the existence of plaintiff's securties, including those involved herein, "in other states," and the Tax Assessor agreed that they were not subject to tax in Florida, and so they were not included in plaintiff's return for that year. The same procedure was followed in the years 1940-1-2-3 (5-6, 106). In August 1943 the Honorable J. M. Lee, as State Comptroller, advised plaintiff that an inspection of its Federal Tax Returns indicated these securities to be taxable (P. Ex. 1; Tr. 3, 6-7). Mr. Alley replied to the Comptroller and also wrote the Assessor stating plaintiff's contention of non-taxability (P. Ex. 2; Tr. 7-8). The Assessor still thought the securities non-taxable (8). In May 1944 the Comptroller wrote the assessor that investiga-

tion had been made and plaintiff's returns found incomplete for the years 1941-2-3 and requested the Assessor to perform his duties under Sec. 199.17, Florida Statutes 1941 (P. Ex. 3 Tr. 9). The Assessor thereupon wrote plaintiff accordingly (P. Ex. 4; Tr. 10). In June 1944 the Assessor again wrote plaintiff concerning penalties and interest upon the contemplated back taxes (P. Ex. 5; Tr. 10-11). Mr. Alley reiterated plaintiff's position in a letter dated June 3, 1944, to the Assessor (P. Ex. 6; Tr. 11-12). The Assessor, notwithstanding his own views and believing he had no discretion in the matter and had to comply with the Comptroller's demand, put these securities on the 1944 tax roll for back taxes for 1941-2-3. He did not include taxes for 1944, because he had not been ordered to do so by the Comptroller (12-14). He then turned over the roll to the Collector (15). The plaintiff filed with the Board of County Commissioners sitting as a Board of Equalization the protest, copy of which is exhibited in the bill of complaint (see admission 108-9). That Board, because of the determination of the Comptroller, took no action (Allegation of bill, admitted by answer).

"14. Plaintiff then instituted this suit. By consent of the parties and upon order of the court, the plaintiff paid the taxes in litigation under protest and subject to refund if it should be finally determined herein that said taxes were invalidly assessed.

"CONCLUSION OF MASTER

"1. This Court has jurisdiction of the parties and subject matter of this cause.

"2. The Motion to Strike the Testimony of James M. Owens, Jr. filed before the Master September 24, 1946, and attached to and filed with this Report, should be and is hereby denied, because said testimony directly supported specific allegations of the bill of complaint. Moreover, the testimony was material to the issues in this cause under the authority of Root v. Wood, 155, Fla. 613, 21 So. (2nd) 133.

"3(a). It is the conclusion of this Special Master that the assessment and taxes for the years 1941-2-3, in suit, were and are illegal and invalid, and unconstitutional because violative of Sections 1 and 4 of the Declaration of Rights of our

State Constitution and of the 14th Amendment to the Constitution of the United States; That the plaintiff was not taxable in respect to the intangibles in question by the State of Florida nor were the said intangibles taxable as having a business situs in the State of Florida. Plaintiff was not domiciled in Florida, either legally or commercially and the said intangibles had no actual business situs in Florida for purposes of taxation or otherwise.

" (b)   The legal domicile of plaintiff has at all times been and is in the State of Delaware, under the laws of which it was originally incorporated and has at all times existed as a corporate entity. It can have no other *legal* domicile. Fowler v. Chillingworth, 94 Fla. 1, 113 So. 667; 23 Am. Jur. 43. When the State of Florida granted to plaintiff a permit to transact business in Florida, this was done under the statute relating to foreign corporations and necessarily in recognition of plaintiff's status as a Delaware Corporation. Ch. 5717, Laws of Florida, 1907; Ch. 613, Florida Statutes.

" (c)   If plaintiff may be said to have acquired a so-called *commercial* domicile for purposes of taxation or otherwise, apart from its legal domicile in Delaware, that commercial domicile upon the facts in evidence herein was not in the State of Florida but rather in the State of New York. It is true that plaintiff had no permit to do business in that State, but we are dealing here with a question of actual business operation. Moreover, there is no evidence in this record as to the statutory requirements of New York or of any violation of its laws. It was a fact in New York City that plaintiff's head office, the actual seat of its over-all business government was located. Its executive officers regularly exercised their complete authority from that office. From there they have controlled and directed all activities of plaintiff, wherever carried on, including but not limited to those conducted by the two subsidiary offices in Florida.

" (d)   The specific intangibles in question do not appear to have ever acquired a business situs in the State of Florida. They were not acquired by plaintiff in the course of its Florida business nor by use of funds or other property derived from that business. The securities or documentary evidences there-

of have never been physically located in this State. They have never been controlled or administered from within the State. No accounting records of them have been kept in Florida. No dividends from them have been received in Florida. There is no evidence that they have ever ben used or employed in Plaintiffs' Florida business; instead, the evidence is to the contrary. They have constituted no part of that business. Thus, there has been a complete lack of that localization or integration of the intangibles in question within the Florida business activity of plaintiff, which in law is of the essence of "business situs" for purposes of taxation. There appears also to have been a complete lack of protection or other governmental benefit given by the State of Florida in relation to these intangibles on the basis of which it could properly have taxed them.

"(e)   The fact that these intangibles were not taxed in Delaware or New York is beside the point. They may or may not have been taxable in one or both of those states, as a matter of fact and law. What is to be determined in this case is whether or not they are taxable in Florida. Their taxation or non-taxation in some other state or states does not determine their taxability here.

"Citation of Authorities Supporting
Conclusions 3(a) to (e).

"In order to state concisely the foregoing conclusions the Special Master has omitted the citation of authorities. The conclusions were reached, however, in reliance upon the following authorities.

"Cleveland etc. R. Co. v. Pennsylvania, 15 Wall 300, 21 L. ed. 179.

Tappen v. Merchants National Bank, 19 Wall 490, 22 L. ed. 189.

"Johnson Oil Refining Co. v. Oklahoma, 290 U. S. 158, 54 S. Ct. 152.

"Beidler v. South Carolina Tax Commission, 281 U.S. I, 51 S. Ct. 54.

Re Wheeling Steel Corporation Assessment, 115 W. Va. 553, 177 S.E. 535; 104 A.L.R. 802.

"Wheeling Steel Corp. v. Fox, 298 U. S. 193, 56 S. Ct. 773,

First Bank Stock Corporation v. Minnesota, 301 U.S. 234, 57 S. Ct. 677.

"Marshall Wells Co. v. Commissioner of Taxation, 220 Minn. 458, 20 N. W. (2nd) 92;

"Starkey v. Carson, 138 Fla. 311, 189 So. 385.

"Wood v. Ford, 148 Fla. 66, 3 So. (2nd) 490.

"Smith v. Lummus, 149 Fla. 660, 6 So. (2nd) 625.

"43 A.L.R. 703-5

"76 A.L.R. 812 et seq.

"143 A.L.R. 378 et seq.

"(f)   The plaintiff has paid all taxes and otherwise observed all conditions precedent to its right to institute and maintain this suit in chancery under the authority contained in Section 196.01 Florida Statutes 1941.   It is entitled to restitution by the Comptroller of the State of Florida of the sum of $17,724.01 paid by it to the Tax Collector of Palm Beach County, Florida, for the back intangible personal property taxes for 1941-2-3 assessed on the 1944 intangible personal property tax roll, and paid as per voucher, Plaintiff's Exhibit No. 10.

"4.   The plaintiff has acted in good faith and been guilty of no concealment of fraud.   It made due and timely protest. It paid the taxes admitted to be due and paid under protest those now contested.

"It is thereupon respectfully recommended that the Court in and by its final decree cancel and annul the said back assessment and taxes for the years 1941, 1942 and 1943 in suit herein, order refund and restitution by the Comptroller to plaintiff of the $17,724.01 paid thereon under protest by plaintiff and grant an appropriate injunction with respect to taxation of the said securities for subsequent years, all substantially as prayed by plaintiff in and by the third numbered paragraph of the prayer to its bill of complaint."

The decree of the Court is as follows:

"This cause came on for the entry of final decree after due notice upon the pleadings, the report of the Special Master in Chancery showing the testimony of the parties and their wit-

nesses, and the findings and recommendations of the Special Master, defendant's exceptions thereto, and argument of counsel.

The formula by which the court is guided in reviewing findings of a Special Master in Chancery is that the Master's findings are to be followed unless clearly erroneous. The Court is unable to say in this case that the Master's findings are wrong. Thereupon,

"IT IS ORDERED AND DECREED that defendant's exceptions are overruled; that the action of defendants in assessing intangible personal property taxes on the 1944 tax roll against the plaintiff, Bessemer Properties, Incorporated, for 1941, 1942 and 1943, is void and shall be held for naught; that the assessment of said taxes, to-wit for the year 1941 of $4,-633.81 and for the year of 1942 of $4,051.58, together with penalties of $3,168.34 and for the year of 1943 of $4,353.67, together with penalties of $2,255.11 is hereby expunged from said 1944 intangible personal property tax roll.

"Within 20 days from the date hereof the defendant, Clarence M. Gay, as Comptroller of the State of Florida, shall promptly refund and pay to the plaintiff, Bessemer Properties, Incorporated, or its Solicitors of Record, the sum of $17,724.01, paid by said plaintiff under protest in discharge of said taxes pursuant to the order of this Court entered October 27th 1944, upon stipulation of the parties.

"Costs of Court, including a fee to the Special Master of $500.00 are assessed against the defendants, but plaintiff Bessemer Properties, Incorporated, shall be and remain primarily liable to the officers of this Court for their said fees, and when paid said plaintiff shall be entitled to execution over against defendants for the recovery thereof.

"The Court retains jurisdiction of this cause to settle all questions that the Court has jurisdiction to settle under the pleadings and the proceedings in this case not settled by the decree, and to make such other and further orders and decrees herein as shall be necessary to make the same effectual."

We have considered the record in the light of briefs and argument of counsel at the bar of the Court, and find no reversable error reflected therein.

The decree is affirmed on authority of the cases and texts cited in Master's report, supra.

So ordered.

THOMAS, C. J., BUFORD, ADAMS and BARNS, JJ., concur.