46 So.2d 165 (1950)
STATE ex rel. UNITED STATES SUGAR CORPORATION
v.
GAY, Comptroller.
Supreme Court of Florida, en Banc.
May 9, 1950.
Rehearing Denied May 31, 1950.
Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for petitioner.
Lewis H. Tribble, Tallahassee, for respondent.
ROBERTS, Justice.
In this original mandamus proceeding, this court is asked to decide whether an obligation represented by a note held by a New York corporation, payable in New York City, and secured by a mortgage on Florida real estate, is liable for the Class C. Intangible Personal Property Tax levied and assessed by Chapter 199, Florida Statutes 1941, as amended, F.S.A. The debtor is a Delaware corporation, having its principal place of business in Clewiston, Florida, and owning property in Glades, Hendry, Martin, and Palm Beach counties, State of Florida, which is the realty covered by the mortgage here involved.
It is alleged that no agency or broker in the State of Florida had any part in negotiating the loan; that the loan had no relation to the New York corporation's insurance business in Florida; that neither the note nor the owner had a domicile or business situs in the State of Florida as regards the transaction and obligation; and that, therefore, the State of Florida *166 had no jurisdiction to tax the obligation evidenced by the note and mortgage.
The pertinent provisions of the statute are as follows:
Section 199.02(3): "(3) Class C intangible personal property is hereby defined as being all notes, bonds and other obligations * * * for payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida; provided, that only that part of the value of the mortgage, deed of trust, or other lien, the real property of which is located within the state shall bear to the whole value of the real property described in said obligation shall be included."
Section 199.11: "On and after January 1, 1942, there is hereby annually levied and assessed on all intangible personal property * * * the following tax:

* * * * * *
"(3) On all class C intangible personal property three mills on the dollar of the taxable value of such class C intangible personal property, which taxable value shall be the principal amount of the indebtedness, evidenced by such obligation, which tax shall be due and payable when the mortgage, deed of trust or other lien is executed and shall be paid to the county tax collector before the mortgage, deed of trust or other lien securing such indebtedness is presented for recordation. Every person who shall take, receive or record any mortgage, deed of trust or other written specific lien in the nature of a mortgage upon real property situated in Florida shall pay the tax prescribed by this subsection in respect to the debt or obligation secured thereby. * * * No mortgage, deed of trust or written evidence of a specific lien in the nature of a mortgage on real property shall be admissible to record * * * or be enforceable in any court of this state unless and until the tax levied by this subsection shall have been paid and until the notation of the tax collector shall have been placed thereon showing the payment of the tax. * * * The tax imposed by this subsection shall be the only intangible tax levied on such notes, bonds and other obligations under this chapter."
We are confronted, at the outset, by the previous decision of this court in State ex rel. Seaboard Air Line Railroad v. Gay, 160 Fla. 445, 35 So.2d 403, wherein it was held that a mortgage debt evidenced by bonds or other like obligations in the hands of or deliverable to non-resident bondholders was not liable to the Class C intangible personal property tax. This decision was followed in State ex rel. Tampa Electric Co. v. Gay, Fla., 40 So.2d 225, 229.
The rationale of the Seaboard case is that the tax is an ad valorem tax on personal property and not a license or excise tax for the privilege of recording a mortgage; that the tax is imposed upon the debt or obligation, or the written evidence thereof, and not upon the mortgage given as collateral security for such debt; and that since, in the contemplation of the law, intangible personal property accompanies the person of the owner, the State of Florida can impose the Class C intangible personal property tax only where it has acquired taxing jurisdiction by reason of the fact that the owner of the debt, or the written evidence of the debt itself, has acquired a domicile or business situs in this State for tax purposes.
The decision in the Tampa Electric Co. case, supra, while mentioning the Seaboard case as controlling, also turns on the point that there was no intention on the part of the Legislature "to tax or to authorize a tax on property without the State and held by those who are neither domiciled in nor citizens of the State", on the theory that a taxing statute must be construed most strongly against the government and in favor of the taxpayer where the intent or meaning of the statute is doubtful.
As to this latter point, we are unable to find anywhere in the statute an indication that obligations secured by liens on Florida real estate, but held by non-residents, were intended to be exempt from the tax. The statute provides that "all notes, bonds and other obligations * * * *167 for the payment of money which are secured by mortgage, deed of trust or other liens upon real property situated in Florida" shall be liable for the tax; and that "Every person who shall take, receive or record any mortgage, deed of trust or other written specific lien in the nature of a mortgage upon real property situated in Florida" shall pay the tax; and that "No mortgage, deed of trust or written evidence of a specific lien in the nature of a mortgage on real property shall be admissible to record or be recorded in any public record of this state or be enforceable in any court of this state unless and until the tax levied by this subsection shall have been paid." We cannot, therefore, see any reason for applying the rule of liberal construction in favor of the taxpayer, since there does not appear to be any ambiguity in the terms of the statute, and we do not think this court should read into the statute an exemption as to obligations owned by non-residents.
As to the Seaboard case, we have no fault to find with the general principles of law therein expressed involving the maxim mobilia sequuntur personam, and we re-affirm the rule that intangible property, in contemplation of law, accompanies the person of the owner and, therefore, is ordinarily taxable only at the domicile of the owner. We cannot, however, adhere to the holding in that case that this maxim, and the fact that the intangible is thus taxable at the domicile of the non-resident owner, can be evoked to defeat the right of the State of Florida to impose the particular tax here in question.
The maxim mobilia sequuntur personam is merely a legal fiction, adopted from considerations of general convenience and policy. The reasons for the fiction that intangible personal property accompanies the person of the owner and is taxable at his domicile, have been variously stated by the courts. One reason given is that, when the tax payer's wealth is represented by intangibles, the tax gatherer has difficulty in locating them and there is uncertainty as to which taxing district affords benefits or protection to the actual property that the intangibles represent. Since the intangibles themselves have no real situs, the domicile of the owner is the nearest approximation. Greenough v. Tax Assessors of City of Newport, 331 U.S. 486, 67 S.Ct. 1400, 91 L.Ed. 1621, 172 A.L.R. 329. It has also been said that the economic advantages realized through the protection, at the place of domicil, of the ownership of rights in intangibles bear a direct relationship to the distribution of burdens which the tax effects, and are sufficient to support the taxation of intangibles at the place of domicile. First Bank Stock Corp. v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061.
Thus, when the owner of intangibles confines his activity to the place of his domicile, the maxim is properly invoked in order to sustain the domiciliary state's taxing power. But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, the reason for a single place of taxation no longer obtains, and the maxim is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 906, 83 L.Ed. 1339.
In Curry v. McCanless, supra, the United States Supreme Court held that the power to tax intangibles was not restricted to one State, whether we "regard the right of a state to tax as founded on power over the object taxed * * * through dominion over tangibles or over persons whose relationships are the source of intangible rights; or on the benefit and protection conferred by the taxing sovereignty, or both." The Curry v. McCanless case was re-affirmed in the case of State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 1012, 86 L.Ed. 1358, 139 A.L.R. 1436, wherein it was said: "In line with our recent decisions in Curry v. McCanless, * * * we repeat that there is no constitutional rule of immunity from taxation of intangibles by more than one State. In case of shares of stock `jurisdiction to tax' is not restricted to the *168 domiciliary State. Another State which has extended benefits or protection or which can demonstrate `the practical fact of its power' or sovereignty as respect the shares (Blackstone v. Miller, 188 U.S. 189, at page 205, 23 S.Ct. 277, at page 278, 47 L.Ed. 439) may likewise constitutionally make its exaction."
As stated by Mr. Justice Frankfurter, in State of Wisconsin v. J.C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 249, 250, 85 L.Ed. 267, 130 A.L.R. 1229: "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society."
Let us look, then, at the "practical operation" of the tax here in question, in the light of the above decisions. It is a matter of common knowledge, of which this court can take judicial notice, that the Class C tax is exacted by our tax gatherers only at the time the mortgage, or other security, is presented for recordation, or for enforcement in our courts; and that, once this tax has been collected on a particular secured obligation, no further annual tax is collected by the tax collectors of this state on such obligation. This has been the long-prevailing construction of Section 199.11(3), supra, by the Comptroller of the State of Florida, of which this court may also take judicial notice. Bloxham v. Consumers' Electric Light & Street R. Co., 36 Fla. 519, 18 So. 444, 29 L.R.A. 507, 51 Am.St.Rep. 44.
It may be seen, therefore, that in its practical operation, the Class C tax is exacted only if the owner of the secured obligation elects to record his security or to enforce it in our courts. It is obvious that the recording of a mortgage, or other security, becomes the generating source of important and definite accessions to the obligation secured thereby. In fact, we think it may fairly be said that the transaction in the instant case would not have been entered into without the security afforded by the mortgage on Florida realty and the protection afforded by our recording statutes, and others, relating to the rights of a mortgagee. And the "practical fact of our power" or sovereignty over such security is obvious. It is the fact of our sovereignty which gives life to such security  which transforms it from a worthless piece of paper into a valuable legal right. Moreover, as heretofore pointed out, this state does not seek to exact a tax disproportionate to the benefit and protection conferred; on the contrary, the tax is exacted only once, and only on that portion of the indebtedness which is secured by mortgage, or other security, on real estate in this state.
It appears, therefore, that if the question is "whether the state has given anything for which it can ask return", State of Wisconsin v. J.C. Penney Co., supra or whether the state can demonstrate "the practical fact of its power" or sovereignty, Blackstone v. Miller, supra [188 U.S. 189, 23 S.Ct. 278], the tax here in question could satisfy the test, and that there is ample justification for the tax.
The non-resident creditor does not have to subject himself to double taxation by seeking the protection of our laws or our courts for his investments. He is free to restrict his mortgage investments to his own state; he may lend his money without security; or he may take a mortgage on Florida realty, but choose not to record it. If, however, the non-resident creditor elects to invoke and enjoy the benefits and protection of our laws and to obtain the economic advantages afforded thereby, it is only just that he should give a quid pro quo in return.
In the instant case, the petitioner has elected to invoke and accept the benefits and protection of our laws. It has paid the tax, presented the mortgage for recordation, and it now enjoys the benefits and protection of our recording statute. By its petition for the issuance of the discretionary Writ of Mandamus, it now seeks to invoke the judicial power of this court to obtain a refund of its money. If it becomes *169 necessary to collect the indebtedness by foreclosure, it will again set in motion the machinery of our courts to its own advantage.
For the reasons stated, the motion for peremptory writ notwithstanding the return is denied, and the cause dismissed.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.
TERRELL and THOMAS, JJ., dissent.
SEBRING, J., not participating.