456 So.2d 899 (1984)
ALLIS-CHALMERS CREDIT CORP., Appellant,
v.
DEPARTMENT OF REVENUE, State of Florida, Appellee.
No. AV-361.
District Court of Appeal of Florida, First District.
July 10, 1984.
Kenneth R. Hart of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and J. Terrell Williams, Asst. Atty. Gen., Tallahassee, for appellee Dept. of Revenue.
JOANOS, Judge.
Allis-Chalmers Credit Corp. ("ACCC") has appealed the final order of the State of Florida Department of Revenue which assessed intangible tax against ACCC's notes receivable which arose out of the sales of equipment in Florida. We affirm.
The issues before us are (1) whether, under the express provisions of Section 199.112, Florida Statutes, ACCC had sufficient business situs in the state for the *900 assessment of intangible tax, and (2) whether the provisions of Section 199.112, Florida Statutes, violate the due process clause of the United States Constitution.
On July 12, 1982, the Department of Revenue issued an assessment against ACCC for the years 1979 and 1980 for intangible taxes, penalties, and interest in an amount totalling $35,079.70. An administrative hearing was held on March 29, 1983, at ACCC's request.
ACCC and the Department of Revenue entered into the following stipulations with regard to the 1979-1980 assessment period:
1. ACCC is a Wisconsin corporation that qualified and is authorized to transact business in Florida. It is a wholly-owned subsidiary of Allis-Chalmers Corp.
2. ACCC's principal business is financing the wholesale and retail sales of agricultural equipment, most of which is manufactured by ACCC. ACCC also finances a small amount of equipment manufactured by ACCC competitors.
3. During the 1979-1980 period ACCC was represented in Florida by one employee whose duties were to call on Allis-Chalmers' Florida dealers to persuade those dealers to use ACCC for financing the sales they made, to keep those dealers supplied with necessary forms, and to give advice to the dealers should complicated or difficult financing situations arise. This employee worked out of the Atlanta office, but lived in Florida. ACCC closed its Florida office in 1973.
4. ACCC filed financing statements with the Florida Secretary of State under U.C.C. Art. 9, and paid the appropriate filing fee. ACCC also filed continuation statements when accounts were extended or refinanced beyond five years.
5. Customer payments were made to ACCC's lock box in Atlanta.
6. In event of customer defaults ACCC, through its Florida representative, contacted delinquent customers by telephone or in person, and arranged in appropriate cases for extensions or refinancing of the initial obligation.
After examining the language and intent of Section 199.112, Florida Statutes, the hearing officer concluded that ACCC did not have a business situs in the state for the intangibles, which though generated in the state, were acquired and kept by ACCC without the state.
The Department of Revenue filed its exceptions to the hearing officer's recommended order. It is the Department's position that ACCC was transacting business in the state within the purview of Section 199.112, Florida Statutes, on the basis of (1) ACCC's voluntary decision to qualify to do business in the state, (2) the business activities of ACCC's employee within the state, and (3) the utilization by ACCC of the Secretary of State's office in the filing of U.C.C. Art. 9 financing statements to perfect ACCC's security interest in the installment notes executed by Florida borrowers.
The dispute herein involves the application and interpretation of Section 199.112(1), Florida Statutes, which provides:
199.112 Business situs. 
(1) All bills, notes or accounts receivable, obligations, or credits, wheresoever situated, arising out of, or issued in connection with, the sale, leasing, or servicing of real or personal property in the state are subject to taxation under this chapter, it being the legislative intent to provide that such intangibles shall be assessable regardless of where they are kept, approved as to their creation, or paid. This provision shall apply to any person representing business interests in the state that may claim a domicile elsewhere, the intent further being that no nonresident, either by himself or through an agent, transact business in the state without paying the same tax which the state would impose on residents transacting the same business. Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale. The provisions of this section shall in no way be construed to alter the tax *901 status of intangibles not connected with the sale, leasing, or servicing of real or personal property in the state.
The section is free of ambiguity, and the legislative intent to tax intangibles "arising out of, or issued in connection with the sale, leasing, or servicing of real or personal property in the state ... regardless of where they are kept, approved as to their creation, or paid" is framed in clear, unequivocal language. Furthermore, the intention to tax non-residents conducting business in the state in the same manner as residents transacting the same business are taxed is equally clear and unequivocal. Fundamental to statutory construction is the rule that statutes which are expressed in clear and unambiguous language require no construction or interpretation.[1] Therefore, appellant's reliance on the rule that tax laws are to be strictly construed against the government and the assertion that doubt as to the meaning of Section 199.112, Florida Statutes, must be resolved in ACCC's favor is misplaced.[2]
Section 199.112(1) read in conjunction with Section 199.052(1)[3] expresses the intent to assess intangible property tax against any entity, "regardless of domicile, who owns or has management, custody, or control of intangible property that has acquired a business situs in this state," no matter where such intangibles "are kept, approved as to their creation or paid." The real issue is not statutory interpretation, but whether ACCC has acquired a business situs in this state within the parameters of Chapter 199.
The primary factors in determining the existence of a business situs for purposes of assessing an intangible tax against a nondomiciliary are:
(1) the permanent nature of the business as opposed to transitory or occasional transactions,[4] and
(2) the degree or extent of the authority exercised by the agent, i.e., whether the agent's authority goes beyond merely clerical functions.[5]
The permanent nature of the business and at least some discretionary authority vested in the agent are indispensable to a finding of business situs for tax purposes. Although not dispositive, other factors to consider are whether the debtor is domiciled in the taxing state and whether the tangible personalty related to the intangibles is within the taxing state. 71 Am.Jur.2d State and Local Taxation § 627 (1973).
Another technique or analysis employed to determine business situs is that of localization and integration of intangible property. (This is the approach favored by ACCC). Common elements found in the cases which adhere to this concept of determining *902 business situs for purposes of intangible taxation are:
(1) proof establishing a continuous course of business or series of transactions,
(2) permanent location of the credits within the taxing state,
(3) proof establishing independent management of the credits as distinguished from custody and safekeeping, and
(4) proof establishing that credits of the non-resident owner are in possession and control of a local agent who manages them in the transaction of a permanent business, and circumstances which place the property in competition with local capital in the area where the agent operates.
Green v. Burroughs Corp., 137 So.2d 595, 599 (Fla. 1st DCA 1962). Burroughs traces the principles which have been held to determine business situs in Florida, as well as the elements stressed by other jurisdictions in making the same determination. In Burroughs, this court noted that the wording of the Louisiana and Georgia statutes made possible the rule urged by the then comptroller and which appellee urges here. As appellee points out, the Burroughs decision in 1962 predates the 1963 passage of the statute here under review. The analogous statutes of other jurisdictions and the cases construing them stress the fact that the debt which created the intangible was owned by a local citizen, it arose as a result of the non-resident's business activities, and the local courts were available for enforcement of the non-resident's rights. Burroughs, supra at 600; State v. Gay, 46 So.2d 165, 168 (Fla. 1950).
The methodology suggested in Department of Revenue Rule 12C-2.06(3)(b) parallels the approach taken by the courts, i.e., in a determination of business situs consideration should be given to (1) whether the property is managed and invested in Florida and takes advantage of Florida laws and benefits, (2) whether the Florida agent's authority goes beyond the performance of mechanical clerical functions and whether the local business utilizes property in operations and management, and (3) the extent to which Florida laws and courts extend benefits to the property. Subsection (a) of the Department's Rule 12C-2.06(3) merely repeats the language of Section 199.112(1), Florida Statutes.
The arguments advanced as justification for taxation of intangibles of a nondomiciliary are:
(1) the taxes are paid by the nonresident owner of the property for the protection afforded that property by the taxing state, Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939); First Bank Stock Corp. v. Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061 (1937); State v. Gay, supra at 168, and
(2) unless such property is taxed by the non-domiciliary, a foreign corporation which established a business situs in the state would have an unfair advantage over similar businesses located and doing business in the state. Smith v. Lummus, 149 Fla. 660, 6 So.2d 625, 628 (1942).
The rationale of Smith v. Lummus, supra, is clearly expressed in Section 199.112(1), and the principle of Curry v. McCanless, et al., serves to counter the violation of due process argument of appellant.
Application of the foregoing tests and the clearly expressed statutory intent of Section 199.112(1) to the stipulated facts in the case sub judice demonstrates that (1) appellant is engaged in a permanent business in this state; (2) appellant has a resident agent in this state; (3) the intangibles here sought to be taxed arose out of sales in this state by appellant's parent corporation to citizens of this state; (4) the intangibles (notes receivable) are not physically kept, approved or paid within this state; (5) the authority of the local agent consists of calling on local dealers of the parent corporation, to persuade those dealers to use ACCC financing for their sales, to supply the dealers with necessary forms, to give advice to dealers in complex financing situations, and to handle delinquent accounts either by telephone or in person and where *903 appropriate  to arrange extensions or refinancing; (6) appellant is registered to do business in Florida; (7) appellant makes use of Florida laws for the protection of its intangibles; (8) the debtors reside in this state; (9) the personalty related to the intangibles is in this state; and (10) the capital which the intangibles represent is in competition with local capital, which, but for ACCC's financing activities in the state, might have been utilized for financing the parent corporation's sales. Appellant takes the position that since it purchased and took possession of these intangibles outside the state and receives payments thereon outside the state, the provisions of Section 199.112(1), Florida Statutes, do not apply to its operation. Of course, the sale of the property which gave rise to the intangibles took place in this state, and the sales of the intangibles were solicited within this state.
On the constitutional issue, appellant cites Gay v. Bessemer Properties, Inc., 159 Fla. 729, 32 So.2d 587 (1947), for the proposition that taxation of intangibles by an entity that "had no actual business situs in Florida for taxation purposes or otherwise" (32 So.2d at 591), is a violation of the due process clause of the 14th Amendment. Appellant fails to note that the court, in making its determination that plaintiff had no business situs in the state, said:
There appears also to have been a complete lack of protection or other benefits given by the State of Florida in relation to these intangibles on the basis of which it could properly have taxed them. (32 So.2d at 591). (e.s.)
A long line of cases affirm that property within the jurisdiction of a taxing power may be taxed concurrently by more than one jurisdiction, again on the principle that a taxpayer has a duty to contribute to the support of government. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939); Graves v. Elliott, 307 U.S. 383, 59 S.Ct. 913, 83 L.Ed. 1356 (1939).
We hold that ACCC has a business situs in this state within the purview of Section 199.112(1), Florida Statutes. We recognize that the facts of this case present a close question. The intangibles here sought to be taxed were actually purchased outside the state. In addition, the duties of ACCC's Florida representative appear to be mostly clerical  although he does exercise some discretionary authority. In every other respect, however, ACCC's business activities in Florida fall within the provisions of Section 199.112(1). ACCC's intangibles arose from sales within this state, ACCC's business transactions in the state are permanent, and the intangible tax sought to be imposed on ACCC is the tax imposed on residents transacting the same business. ACCC presently enjoys the same benefits from its financing of Florida equipment sales as it did when the corporation maintained an office in the state. And, ACCC enjoys the same protection of Florida law as it did when the corporation maintained an office in the State. The cases dealing with intangible taxation levied on non-residents make the point that the non-resident enjoys the protection of the state, and so should share the financial responsibility. The final order of the Department of Revenue is affirmed.
Nevertheless, believing the issues raised here to be of great public importance, we certify to the Supreme Court of Florida the following questions:
1. For intangible tax assessment purposes under the express provisions of Section 119.112, Florida Statutes, does a non-resident corporation have sufficient business situs in this state when (1) the corporation has qualified to do business in this state, (2) its business activities in the state are permanent and continuous as opposed to a single or temporary transaction, (3) it maintains a resident agent in this state, (4) the intangibles arose out of sales of personal property in this state  but the notes were acquired by the corporation outside this state and payments are received outside the state, and (5) the corporation perfects its security interest in the intangibles by filing U.C.C. Art. 9 financing statements with the office of the Secretary of State? *904 In other words, for the imposition of intangible tax on a nonresident corporation, at what point is contact sufficient to establish business situs in the state lost?
2. Do the provisions of Section 199.112, Florida Statutes, which subject to intangible taxation all notes receivable arising out of the sale of real or personal property in this state, regardless of where the notes are paid or kept, violate the due process clause of the U.S. Constitution?
SHIVERS and BARFIELD, JJ., concur.
NOTES
[1] S.R.G. Corp. v. Dept. of Revenue, 365 So.2d 687, 689 (Fla. 1978): "In statutory construction, case law clearly requires that legislative intent be determined primarily from the language of the statute. (citations) The reason for this rule is that the legislature must be assumed to know the meaning of the words and to have expressed its intent by the use of the words found in the statute." State v. Egan, 287 So.2d 1, 4 (Fla. 1973); Mills v. Korash, 249 So.2d 765, 769 (Fla. 1st DCA 1971); Owen v. Cheney, 238 So.2d 650, 653 (Fla. 2d DCA 1970).
[2] Appellant's brief, pp. 16-17. State v. Gay, 46 So.2d 165, 167 (Fla. 1950): "We cannot, therefore, see any reason for applying the rule of liberal construction in favor of the taxpayer, since there does not appear to be any ambiguity in the terms of the statute, and we do not think this court should read into the statute an exemption as to obligations owned by non-residents." (e.s.)
[3] 199.052 Returns. 

(1) It is hereby made the duty of every person in the state, and every person who has become a legal resident of the state on or before January 1, who owns or has control, management, or custody of intangible personal property which is subject to annual taxation under this chapter to file a sworn return with the department on or before June 30 of each year, listing separately the character, description, location, and just valuation of all such property. This subsection applies to any person, regardless of domicile, who owns or has management, custody, or control of intangible property that has acquired a business situs in this state.
[4] Metropolitan Life Ins. Co. v. New Orleans, 205 U.S. 395, 27 S.Ct. 499, 51 L.Ed. 853 (1907).
[5] Smith v. Lummus, 149 Fla. 660, 6 So.2d 625 (1942). Generally, 71 Am.Jur.2d State and Local Taxation, §§ 672-676 (1973).