NIMMONS, Judge.
This appeal concerns an assessment of an intangible personal property tax in excess of $24,000 under Chapter 199, Florida Statutes, by the Department of Revenue (Department) against the United States Shoe Corporation (U.S. Shoe) for the years 1980 through 1983 against certain accounts receivable held by U.S. Shoe and owed by Florida debtors. After commencing suit in the Circuit Court, pursuant to Section 72.-011, Florida Statutes, U.S. Shoe entered into a stipulation of facts with the Department whereupon each party moved for summary judgment in its favor. The Circuit Court granted the Department’s motion and entered summary judgment in its favor, affirming the tax assessment in its entirety. We reverse.
The undisputed facts relevant to this appeal, as stipulated to by the parties, are as follows:
(1) U.S. Shoe is an Ohio Corporation qualified to transact business in the State of Florida pursuant to the foreign corporation provisions of Chapter 607, Florida Statutes. U.S. Shoe continuously maintained a registered office and a registered agent in this state, as required by Section 607.324, Florida Statutes.
(2) U.S. Shoe filed corporate income tax returns in Florida during the assessment years, and paid the taxes due thereon under the Florida Income Tax Code.
(3) During the tax assessment years 1980-1983, U.S. Shoe employed eleven (11) sales agents to solicit orders for U.S. Shoe products from Florida merchants. Ten (10) of U.S. Shoe’s sales agents were permanent residents of Florida. . U.S. Shoe’s sales agents were all compensated on a commission basis and paid by checks which were processed outside of the State of Florida and drawn on banks outside of the State of Florida.
(4) The commission sales agents operated out of their own homes. U.S. Shoe did not maintain any sales offices for them.
(5) U.S. Shoe’s sales agents were not authorized to accept orders on behalf of U.S. Shoe or to otherwise make any commitment for or enter into any obligation on behalf of U.S. Shoe. They had no authority to negotiate prices or other sales terms, commit to shipping dates, make adjustments to accounts, accept returns, or engage in the collection of accounts.
(6) At all relevant times, orders solicited by U.S. Shoe’s commission sales agents in Florida were approved and accepted outside the State.
(7) The intangibles in question are accounts receivable and security agreements held by U.S. Shoe and owed by Florida debtors in connection with the purchase from U.S. Shoe of merchandise shipped to and located in the State of Florida. These intangibles were at all times approved for creation, managed and paid for at offices of U.S. Shoe outside of Florida.
(8) U.S. Shoe was the holder of purchase money security agreements executed by Florida debtors varying in number from a minimum of 25 to a maximum of 36 Florida merchants. These security agreements gave U.S. Shoe a lien on merchandise located in the State of Florida. U.S. Shoe utilized the Florida Secretary of State’s office to perfect and protect its liens created under the security agreements with the Florida debtors by the filing of U.C.C. financing statements.
(9) In over 90% of U.S. Shoe’s accounts, the receivables were extended on open credit and were not protected by any lien or other legal process under Florida law.
(10) During the assessment period, U.S. Shoe utilized the Florida courts in three separate legal actions to seek recovery of sums due by the Florida debtors on delinquent accounts receivable.
It is, as indicated above, undisputed that U.S. Shoe is not a domiciliary of Florida. The State’s imposition of an intangible personal property tax on U.S. Shoe’s accounts receivable owed by Florida debtors in con *1254 nection with the purchase of U.S. Shoe products can only be justified if U.S. Shoe’s accounts receivable have developed a “business situs” within this State. Section 199.-112(1), Florida Statutes,[1] provides as follows:
(1) All bills, notes or accounts receivable, obligations, or credits, wheresoever situated, arising out of, or issued in connection with, the sale, leasing, or servicing of real or personal property in the state are subject to taxation under this chapter, it being the legislative intent to provide that such intangibles shall be assessable regardless of where they are kept, approved as to their creation, or paid. This provision shall apply to any person representing business interests in the state that may claim a domicile elsewhere, the intent further being that no nonresident, either by himself or through an agent, transact business in the state without paying the same tax which the state would impose on residents transacting the same business. Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale. The provisions of this section shall in no way be construed to alter the tax status of intangibles not connected with the sale, leasing, or servicing of real or personal property in the state.
As recognized in Allis-Chalmers Credit Corp. v. Department of Revenue, 456 So.2d 899 (Fla. 1st DCA 1984), Section 199.-112(1), when read in conjunction with Section 199.052(1), Florida Statutes,[2] expresses the intent to assess intangible property tax against any entity, regardless of domicile, who owns or has managment, custody, or control of intangible property that has acquired a business situs in this state, no matter where such intangibles are kept, approved as to their creation, or paid. 456 So.2d at 901.
In Allis-Chalmers, this court was presented with virtually the identical issue now before us: whether appellant’s receivables, under the provisions of Section 199.-112, had acquired a sufficient business si-tus in Florida so as to justify the imposition of the Florida intangible personal property tax. In Allis-Chalmers, Allis-Chalmers Credit Corp. (“ACCC”) appealed a final order of the Department which assessed an intangible tax against ACCC’s notes receivable which arose out of the sales of equipment in Florida. The stipulation of facts entered into between ACCC and the Department established the following:
1. ACCC was a Wisconsin corporation authorized to transact business in Florida;
2. ACCC’s principal business was financing the wholesale and retail sales of agricultural equipment;
3. During the tax assessment period, ACCC was represented in Florida by one employee whose duties were to call on Allis-Chalmers’ Florida dealers to persuade those dealers to use ACCC for financing the sales they made, to keep those dealers supplied with necessary forms, and to give advice to the dealers should complicated or difficult financing situations arise. This employee worked out of the Atlanta office, but lived in Florida;
4. ACCC filed financing statements with the Florida Secretary of State under U.C.C. Art. 9, and paid the appropriate filing fee. ACCC also filed continuation statements when accounts were extended or refinanced beyond five years;
*1255 5. Customer payments were made to ACCC's lock box in Atlanta;
6. In event of customer defaults ACCC, through its Florida representative, contacted delinquent customers by telephone or in person, and arranged in appropriate cases for extensions or refinancing of the initial obligation.
On the basis of these facts, this court concluded that the notes receivable had acquired a business situs in this state sufficient to justify imposition of an intangible tax under Chapter 199.
Although the facts in Allis-Chalmers are very similar to those in the instant case, there is at least one significant difference which we feel dictates a different result than that which was reached in Allis-Chalmers. There, the Court said that a primary factor to consider in determining the existence of a business situs for purposes of imposing an intangible tax on a nondomiciliary is “the degree or extent of the authority exercised by the agent, i.e., whether the agent’s authority goes beyond merely clerical functions.” 456 So.2d at 901. The Court further held:
The permanent nature of the business and at least some discretionary authority vested in the agent are indispensable to a finding of business situs for tax purposes, (emphasis supplied)
Ibid. The Court, in sustaining the imposition of the tax in Allis-Chalmers, recognized that the facts presented a “close question,” largely because “the duties of [Allis-Chalmers Credit Corporation’s] Florida representative appear to be mostly clerical — although he does exercise some discretionary authority.” The Department asserts that the Court’s statement in Allis-Chalmers that the nondomiciliary corporation’s Florida representative must have at least some discretionary authority is dictum because, says the Department, the facts in Allis-Chalmers were that there was no discretionary authority in the Florida agent. We disagree. The opinion clearly states that the taxpayer’s Florida agent did “exercise some discretionary authority.” And the Court in Allis-Chalmers having sustained the intangible tax, we do not see how the Court’s statement that “at least some discretionary authority vested in the agent [is] indispensable” can possibly be characterized as dictum.[3]
The authority of the Allis-Chalmers agent was summarized by the Court as follows:
[T]he authority of the local agent consists of calling on local dealers of the parent corporation, to persuade those dealers to use ACCC financing for their sales, to supply the dealers with necessary forms, to give advice to dealers in complex financing situations, and to handle delinquent accounts either by telephone or in person and where appropriate — to arrange extensions or refinancing.
456 So.2d at 902, 903.
By contrast, the authority of U.S. Shoe’s sales agents, as described in the stipulation reproduced earlier in this opinion, cannot be characterized as “at least some discretionary authority.” Since such was an indispensable element to the finding of business situs of this nondomiciliary’s intangibles, it was error for the trial court to enter summary judgment in favor of the Department and to deny U.S. Shoe’s motion for summary judgment.
In view of our holding on the above grounds, we need not reach the constitutional issues raised by the appellant.
We reverse the summary judgment in favor of the Department and remand for the entry of summary judgment in favor of U.S. Shoe.
JOANOS and THOMPSON, JJ., concur.

. Unless otherwise indicated, the statutes referred to throughout this opinion will be the 1983 version of Florida Statutes. Both parties have relied herein upon the 1983 version.

. Section 199.052(1) provides:
(1) It is hereby made the duty of every person in the state, and every person who has become a legal resident of the state on or before January 1, who owns or has control, management, or custody of intangible personal property which is subject to annual taxation under this chapter to file a sworn return with the department on or before June 30 of each year, listing separately the character, description, location, and just valuation of all such property. This subsection applies to any person, regardless of domicile, who owns or has management, custody, or control of intangible property that has acquired a business situs in this state.

. Our examination of the appellate file in Allis-Chalmers discloses that the Department which was also the appellee in that case — and represented by the same appellate counsel as in the instant case — did not take issue, via a motion for rehearing or otherwise, with our holding regarding the indispensability of the element regarding the authority of the nondomiciliary corporation’s agent.